[No. 1281.]

MARY J. POWELL, RESPONDENT, v. D. C. CAMPBELL, APPELLANT.

DIVORCE — PROPERTY SET APART FOR SUPPORT OF WIFE — STATUTES CONSTRUED (GEN. STAT. 496.) — When a divorce is granted at the instance of the wife against her husband, on the ground of extreme cruelty, the court is authorized under the statutes of this state (Gen. Stat. 496) to set apart such portion of the husband's separate property for the support of the wife and children as shall be deemed just, and the court, in a proper case, has the power under the statute to invest the wife with the husband's title to the property as one of the means of securing such support. (Wuest v. Wuest, 17 Nev. 221, affirmed.)

IDEM—PLEADINGS—LIS PENDENS—KNOWLEDGE OF PURCHASER.—In an action for divorce, where the wife alleges her necessities and her husband's abilities, and prays that specific real property be set apart for her support: *Held*, that the rule of *lis pendens* applies against a purchaser, *pendente lite*, with actual knowledge of all the facts.

IDEM—EQUITY—DEED SET ASIDE.—In an action in equity the court will at the instance of the wife set aside the deed of such a purchaser and require the legal title to the property to be conveyed to her.

IDEM—EVIDENCE—STATEMENTS OF WIFE—CONSIDERATION.—In such a suit it is not error to exclude evidence that the wife, pending the divorce proceedings, told her husband that he might sell the ranch in question, if he wished to; that it was always ·a millstone about their necks,—it not being contended that the purchaser had knowledge of the remark, upon which he relied, as her consent, not founded on any consideration, would not amount to a release of her right to support.

IDEM—NECESSARY PARTIES.—To such a suit the former husband, who was duly served· with process in the divorce action, and all his interest in the land divested by the decree therein, is not a necessary party.

APPEAL from the District Court of the State of Nevada, Washoe County.

*R. R. Bigelow*, District Judge.

The facts are stated in the opinion.

*R. H. Lindsay* and *R. M. Clarke*, for Appellant.

I.   The judgment in *Powell* v. *Powell* is invalid because the court granted relief in excess of what the pleadings warranted. (Gen. Stat. 495, 496, 3172, 3174.) .

II.   The pendency of the divorce suit did not of its own force deprive Richard Powell of the power to dispose of his property.

The divorce proceedings are special, and the power of the court over the property of the parties must be derived from the statute.

The statute must be construed strictly. The remedy it provides is not cumulative, but exclusive. When a statute creates a right and provides a remedy for its enforcement, the remedy is exclusive. (*Meister* v. *Moore*, 96 U. S. 79; 2 Kent's Com. 104; Gen. Stat. 492-494.)

III.   The decree in *Powell* v. *Powell* did not operate to clothe respondent with title. (Pom. Eq. Jur., Secs. 134, 135, 170, 428, 1317, 1318.)

Respondent, having failed to avail herself of the provisions of the statute and of the law in the divorce case, cannot now be heard to complain in another and a separate action. (Stewart M. & D., Sec. 326; *Harris* v. *Harris*, 36 Barb. 88; *Clemens* v. *Clemens*, 37 N. Y. 529; Smith's L. C. 787.)

IV.    The court erred and exceeded its jurisdiction in decreeing to Mrs. Powell the title to her husband's separate property unconditionally. (Gen. Stat. 496, 499-533, 3174; *Darrenberger* v. *Haupt*, 10 Nev. 43; *Lake* v. *Bender*, 18 Nev. 402.)

V.    But if the judgment in *Powell* v. *Powell* is valid and binding in so far as it attempts to vest title in respondent, then such title is complete by the terms of the decree, and respondent has a complete and ample remedy at law, and this equitable action cannot be maintained. (*Sherman* v. *Clark*, 4 Nev. 138; *Conley* v. *Chedic*, 6 Nev. 222; *Crosier* v. *McLaughlin*, 1 Nev. 348; *Champion* v. *Sessions*, 1 Nev. 478; *Sampson* v. *Ohleyer*, 22 Cal. 206; *Sharp* v. *Lumley*, 34 Cal. 611; *Howard* v. *Kennedy*, 4 Ala. 592; 39 Am. Dec. 307.)

VI.    Richard Powell was a necessary party to this action. (Gen. Stat. 3039; *Ousterhoudt* v. *Board of Sup.*, 98 N. Y. 239; *Settembre* v. *Putnam*, 30 Cal. 490; *Gates* v. *Lane*, 44 Cal. 395; *O'Connor* v. *Irvine*, 74 Cal. 435.)

VII.    The question is not one of *estoppel of respondent, but authority in Richard Powell to sell.* If the divorce proceeding suspended this authority respondent's consent revived it. (*Kottman* v. *Peyton*, 1 Speers Eq. Rep. 46; *Terry* v. *Hopkins*, 1 Hill Eq. Rep. 1; *Cheshire* v. *Payne*, 16 B. Mon. 618.) The act defining the rights of husband and wife, approved March 10, 1873, (Gen. Stat. 510), is subsequent to the divorce act, and dealing with identical subject matter supersedes and repeals it by implication. (*Thorpe* v. *Schooling*, 7 Nev. 15; *State ex rel. Flack* v. *Rogers*, 10 Nev. 319; *United States* v. *Cheeseman*, 3 Saw. 424; *United States* v. *Barr*, 4 Saw. 254; Gen. Stat. 516, 524, 533.)

*Wm. Webster*, and *S. D. King*, for Respondent.

I.    Campbell is bound by the judgment and decree in *Powell* v. *Powell.* (*Barber* v. *Barber*, 21 How. 582; *Cheever* v. *Wilson*, 9 Wall. 108; *Tilton* v. *Cofield*, 93 U. S. 163.) The court rendering the judgment was a court of general jurisdiction. (Const. Art. VI., Sec. 6; *Wilde* v. *Wilde*, 2 Nev. 306; *Wuest* v.

*Wuest,* 17 Nev. 217; *Darrenberger* v. *Haupt,* 10 Nev. 43; *Harvey* v. *Tyler,* 2 Wall. 328.) The jurisdiction of the person in *Powell* v. *Powell* appears upon the face of the record. (Freem. Judg. 124, 125; *Bank U. S.* v. *Dandridge,* 12 Wheat. 69; *Mc-Nitt* v. *Turner,* 16 Wall. 352; *Rich* v. *Lambert,* 12 How. 353; 1 Green. Ev., Sec. 19.) Any claim that Jane Powell thereby vested Richard Powell with a power to convey seems equally fallacious. (Gen. Stat. 2624, 2643; *Hepburn* v. *Dubois,* 12 Pet. 345.)

II.  The objections to the questions asked Mrs. Powell were well taken. Jane and Richard Powell were husband and wife at the time, and the declarations, if made, were communications between husband and wife. (Gen. Stats. 3403; *Terry* v. *Belcher,* 1 Bail. (S. C.) 568; *Commonwealth* v. *Hayes,* 145 Mass. 289; *Bowman* v. *Patrick,* 32 Fed. Rep. 368; *Brock* v. *Brock,* 116 Penn. St. 109; *Dexter* v. *Booth,* 2 Allen, 559; *Jacobs* v. *Hesler,* 113 Mass. 157; *Drew* v. *Tarbell,* 117 Mass. 90; *Brown* v. *Wood,* 121 Mass. 137.)

III.  Richard Powell is not affected by the decree, and he is not a necessary party to the action. (*Cole S. M. Co.* v. *Va. & G. H. W. Co.* 1 Saw. 470; *Kerr* v. *Watts,* 6 Wheat. 550; *Hickox* v. *Elliott,* 10 Saw. 415.)

By the Court, LEONARD, C. J.:

On the ———— day of March, 1886, respondent commenced an action in the district court of Washoe county, to obtain a decree of divorce *a vinculo* against her husband, Richard Powell, on the ground of extreme cruelty. In her complaint she fully and specifically described certain lands whereon was the residence of Powell and wife, and certain personal property, all the separate property of the said Powell, of the value of about three thousand dollars; which she alleged might, by order of the court, be applied to her support and maintenance, and in aid of the prosecution of her action against the defendant. She also alleged that said property was all the property owned by the defendant; that she was without means to prosecute her action, that she was impecunious, and in delicate health; that her health had suffered because of the defendant's cruelty towards her; that she was dependent upon her friends and relatives for support and subsistence. She prayed for a decree of divorce, and that

all the real and personal property of the defendant be set apart to her for her support and maintenance, except such as might be appropriated for her maintenance and in aid of her action against the defendant, pending litigation; that the title to the real property of defendant be decreed to her; and for such other relief as she might be entitled to receive.

Personal service of summons, attached to a certified copy of the complaint, was made upon the defendant Powell, in Washoe county, March 3, 1886. Defendant appeared for the purpose of contesting plaintiff's application for an allowance for suit money and support pending the litigation, but he failed to answer the complaint, or to appear in the action, except as before stated.

On the thirtieth day of March, 1886, the cause came on for trial. Plaintiff introduced her evidence, and, it appearing that defendant's default had been entered, the court entered a decree dissolving the marriage of plaintiff and defendant, "and that the plaintiff do have for her support, from and out of the separate property of the defendant, two horses and their harness and one wagon, * * * described in the complaint and findings of fact filed in said action; * . * * that plaintiff have title to said property, and all of it, against the defendant, and that she have possession thereof; that plaintiff do have against the defendant, and from and out of his separate property, the following described real property, and real property interests and appurtenances, to wit: (Then following a definite description, as stated in the complaint.) It is ordered, adjudged and decreed by the court, that the title to said land and water, and the use of said water, together with the improvements and appurtenances with said lands and water, and the use of said water, be, and the same is, taken from and out of the defendant, and placed in and confirmed to the plaintiff, and to her heirs and assigns, and that she have possession thereof as against the defendant." March 25, 1886, pending the divorce suit, defendant in this action took a deed of conveyance to himself from Richard Powell of all the real property and property rights described in the complaint and decree in the divorce case, and a transfer and assignment of all the personal property described therein; and at the commencement of this action this defendant still held the title and possession of said real property. The decree in the divorce case remains unreversed and unmodified.

Prior to and at the time he received said conveyance, and before making any payment on account of said purchase, defendant had actual personal knowledge of the pendency of the divorce suit of *Powell* v. *Powell,* and that the title and disposition of all of said property, real and personal, was involved in said action, and that the plaintiff therein claimed and demanded relief therein in respect of all of said property. The value of the property sold by Powell to defendant was at least three thousand dollars, while the price paid was but one thousand four hundred dollars.

This action was commenced June 26, 1886, to annul the deed from Powell to defendant, and. to compel the latter to convey to plaintiff, by good and sufficient deed, the real property described in Powell's deed to him. Defendant, Campbell, appeared and answered. In her complaint plaintiff charges that Powell gave, and Campbell received, the deed above mentioned, with intent to cheat and defraud plaintiff, and to defeat the operation of any judgment that might be recovered in the said divorce suit, but the findings do not cover this issue. The court proceeded upon the theory that defendant was a purchaser *pendente lite,* with actual knowledge of the then pending suit for divorce, the property to be affected thereby, and the relief demanded; that in this action he was as conclusively bound by the decree in that case as he would have been if he had been made a party defendant; and that plaintiff could maintain this action to acquire from him the legal title to property to which she had acquired the equitable title in the divorce suit. A decree was entered accordingly. From that decree, and an order overruling defendant's motion for a new trial, this appeal is taken.

At the trial plaintiff offered, and the court admitted, in evidence the judgment roll in the case of *Powell* v. *Powell,* against defendant's objections, based upon several grounds stated, the first and most important of which was as follows: " That said judgment roll, decree, and each and all of said papers, are irrelevant, immaterial, and incompetent as evidence for any purpose in this case, for the reason that the said decree is a nullity, in so far as it attempts to divest the title of the property mentioned in said decree out of Richard Powell, and vest it in the plaintiff in this action." The fourth is as follows: "It being admitted by the pleadings in this action that all the

property in dispute herein was, before the commencement of the action of *Powell* v. *Powell*, the separate property of said Richard Powell, the court which tried said action had no power to decree the title to any of it to the plaintiff in said divorce case."

These grounds of objection may. be considered together. If, under the statute, the district court has power, in any suit for divorce on the ground of extreme cruelty of the husband, to divest him of the title of his separate property, and invest the wife with the same, so far as that may be done by a decree, then the objection made upon the grounds above stated was not well taken; because, if there was power, then the most that can be claimed is that it was error to decree the title, and the decree cannot be assailed collaterally. It is undoubtedly true that, if the court had power to decree the title, such power must be found in the statute. (*Perkins* v. *Perkins*, 16 Mich. 167; *Bacon* v. *Bacon*, 43 Wis. 202; *Donovan* v. *Donovan*, 20 Wis. 586, *Barker* v. *Dayton*, 28 Wis. 379.)

Does our statute, in a proper case, confer such power?

In *Wuest* v. *Wuest*, upon the facts shown, the court upheld a decree awarding certain real estate to the wife absolutely. (17 Nev. 221.)

In *Lake* v. *Bender*, we did say, and now reiterate the same, that the object of the statute was to provide proper support for the wife and minor children, and that the legislative intent to limit the disposition of the husband's property to their proper support was manifest. In that case, where there was a direct appeal, and where, consequently we could consider mere errors, the court below had decreed to Mrs. Lake one hundred and fifty dollars per month for her support, and made the same a charge and lien upon certain real estate. She appealed, and it was urged in her behalf that Lake's separate property should have been divided between the spouses, and that in making an order for a monthly payment of one hundred and fifty dollars the court abused its discretion. It was to this claim for a division, under the circumstances, that we directed our argument, and we tried to show that, in the case then in hand, a decree investing Mrs. Lake with the title to specific property was not necessary for her proper support, and consequently that it should not be granted. If, in an action of this character, the statute permits the court to decree to the wife any portion of

the husband's separate property absolutely, it should never be done unless such action is reasonably necessary for the accomplishment of the primary object of the statute—support of the wife and minor children; and if, in any case, the discretion of the trial court should be abused, this court, upon direct appeal, would not fail to correct the error.

The statute provides that, "when the marriage shall be dissolved by the husband being sentenced to imprisonment, and when a divorce shall be ordered for the cause of adultery committed by the husband, the wife shall be entitled to the same proportion of his lands and property as if he were dead; but in other cases the court may set apart such portion for her support and the support of their children as shall be deemed just and equitable." (Gen. Stat, 496.)

The court may "set apart" so much of the husband's separate property, in case of divorce for extreme cruelty, as, under the circumstances, is just and reasonable for the support of the wife and their children. If more is set apart than is just and reasonable for support, it is error; but, until reversed or modified on appeal, the decree in this respect is not void. Does the power to set apart, include the power to decree the husband's title to her, if in a given case it is necessary to do so in order to provide proper support for the wife and children? In this, as in all other cases of statutory construction, we must find, if possible, the legislative intent, and, in an earnest endeavor to do so in this case, the first thought that comes to our minds is, as before stated, that the primary object of the legislature was to give the wife and children a support out of his property; and, if the accomplishment of this object depends upon decreeing to her the title, what good reason can be given for withholding it? Is the entire title any more sacred than the absolute right of use for life, if the whole is required?

The learned counsel for appellant say: "The pretense that clothing the wife with the absolute title to the husband's property, and imposing no restrictions upon its disposal, is doing nothing more than setting it apart for her support, is too absurd for argument." Let us see. The section of the statute under consideration was first passed by the legislature of 1861, (Stat. 1861, 99, Sec. 27.) That section was amended in 1865, (Stat. 1864–65, 99,) although the amended section, in respect to the part under consideration, is substantially the same as the

original. The divorce act of 1861, was passed November 28, 1861. The following day the probate act was passed, (Stat. 1861, 186;) and yet in the last named act, these words are used: "If there is no law in force exempting property from execution, the following shall be set apart for the use of the widow or minor child or children, and shall not be subject to administration. * * * When property shall have been set apart for the use of the family, in accordance with the provisions of this chapter, if the deceased shall have left a widow, and no minor child, such property shall be the property of the widow. If he shall have left, also, a minor child or children, the one-half of such property shall belong to the widow, and the remainder to the child, or in equal shares to the children, if there be more than one. If there be no widow, the whole shall belong to the minor child or children." And in the fourth section of the homestead act of 1865, (Gen. Stat. 542,) is this language: "The homestead and all other property exempt by law from sale under execution shall, upon the death of either spouse, be set apart by the court as the sole property of the surviving spouse, for his or her benefit, and that of his or her legitimate child or children." So we see that, in the probate act or homestead law, the words "set apart" were used in the sense that property set apart should belong absolutely to the persons for whose benefit the statute made provision. It is true that in the divorce act it is not declared that the property set apart for the support of the wife and children shall belong to the wife, and for a good reason. The legislature intended only to provide support out of his property, and it was not intended that the title should be set apart unless necessity required it. But if such necessity exists, why may not the words "set apart" have as broad meaning as they are declared to have in the other statutes quoted ?

Again, if in no case can the court decree to the wife any portion of the husband's real estate in its entirety, then the same is true in relation to his personal property. No greater power is given in one case than in the other. Did the same legislature that gave to widows and fatherless children, absolutely, a liberal amount of property, including household goods, intend in all cases to prohibit courts from providing the same security of home and support to the woman who is compelled to seek the law's protection against the husband's cruelties and indignities. The language and spirit of the divorce law do not show such

intention, and the same words used in the other statutes referred to lead the mind to an opposite conclusion. Authorities upon this question differ greatly, because they are generally based upon dissimilar statutes. But an examination as brief as possible of some of them will, we think, sustain our conclusion.

Counsel for appellant refer us to *Maguire* v. *Maguire*, 7 Dana, 187; *Rogers* v. *Vines*, 6 Ired. 293; *Darrenberger* v. *Haupt*, 10 Nev. 43; *Lake* v. *Bender*, 18 Nev. 402.

The last two are not opposed to our construction.

In *Maguire* v. *Maguire*, the court decreed a divorce *a vinculo*, allowed the wife to marry again after two years, interdicted a future marriage by the husband, and secured to the wife all the property owned by her in her own right at the time of her marriage. The case was taken to the court of appeals by writ of error for a revision of the decree. The court said: "But the decree itself is not for alimony, and, if it had been such, it would be erroneous; because it does not secure to the wife, as wife, an annuity or other personal right to maintenance, but it purports to confirm to her, as a *feme sole*, the absolute title to property, which should never be done in case of mere alimony." The seventh section of the statute of 1809, under which the chancellor proceeded in that case, was as follows: "The court pronouncing the decree of divorce shall regulate and order the division of the estate, real and personal, in such way as to them shall seem just and right, having due regard to each party, and the children, if any; provided, however, that nothing herein contained shall be construed to authorize the court to compel either of the parties to divest himself or herself of the title to the real estate." (1 Litt. & S. Dig. Ky. 1822, p. 443.) Under such a statute, the decision is not an authority against our conclusion under our statute. The same may be said of *Quisenberry* v. *Quisenberry*, 1 Duv. 198; *Lovett* v. *Lovett*, 11 Ala. 767; *Fishli* v. *Fishli*, 2 Litt. 337.)

But *Berthelemy* v. *Johnson*, 3 B. Mon. 90, 38 Am. Dec. 179, does throw light upon our case. We quote from the opinion: "Jacques C. Berthelemy seeks the reversal of a judgment in bar of an action of ejectment brought by him against Cave Johnson, the defendant in error. The plaintiff claims a legal right of entry in the land in contest, as sole heir of his deceased father, to whom the defendant had conveyed the title in fee, in the year 1797.

The defendant relied on a divorce *a vinculo* of the wife of the decedent, adjudged in virtue of an act of assembly passed in December, 1803; a judicial sentence declaring that the fee-simple title to said land should vest absolutely in the divorced wife; and a subsequent sale and conveyance of it by her to him. * * * The same enactment (1803) authorized the court, without qualification as to mode, to secure to the wife support out of the husband's estate, and the court adjudged that the fee-simple to the said tract of land should vest in her as one of the means of securing that support. This did not, in our opinion, exceed either the legislative power, or the plenary discretion confided to the court; and therefore, were it deemed erroneous, it would not be void." We have not been able to find the act of assembly referred to, but, taking the court's statement of its provisions as correct, they were, in substance and effect, like ours.

In *Rogers* v. *Vines*, the question was whether under the statute, when slaves were assigned to the wife for alimony out of the husband's estate, she had the absolute property in them. The statute authorized the court to allow her such alimony as her husband's circumstances would permit, not exceeding one-third of the annual income or profits of his estate or occupation, or to assign to her separate use such part of the real and personal estate of the husband as the court should think fit, not exceeding one-third part thereof, as the justice of the case might require, which should continue until a reconciliation should take place between the parties. The court held that the provision that her separate use should continue until reconciliation was absolutely inconsistent with the power of sale in the wife; because either the sale would prevent the revesting of the property in the husband upon a reconciliation, which would defeat the policy of the legislature, and directly contradict the act, or the wife would have the power of defeating her sale by returning to her husband, which the legislature could not have intended. The conclusion of the court was that the separate enjoyment of specific things was given as alimony in lieu of money, and that the wife's right was, by its nature and the terms of the statute, limited to the period of separation, and that it terminated by the death of either.

In *Calame* v. *Calame*, 25 N. J. Eq. 548, the decision was similar to that in *Rogers* v. *Vines*. The statute provided that

the court might make such order touching alimony and main-
tenance of the wife and children by the husband as should be
fit, reasonable, and just. It then provided the manner and
means of enforcing payment. The court held that the modes
appointed to enforce payment of the alimony, such as requir-
ing security from the husband, and authorizing the sequestra-
tion of his personal estate, and the rents and profits of his real
estate, were in opposition to the idea that a part of the land
itself could be set apart for the wife. And from the entire statute
it was held that the words "alimony" and "maintenance" were
used in their established technical sense; that is, money pay-
ments of the character of an annuity. The two cases last referred
to are not against our conclusion. The words "alimony" and
"maintenance" are not used in the body of our statute, and there
are no similar provisions indicating an intention shown in the
North Carolina and New Jersey statutes.

In Illinois the statute authorizes courts to make such order
touching alimony and maintenance of the wife, and the care,
custody, and support of the children, as shall be fit, reasonable,
and just; and, when the wife is complainant, to order the hus-
band to give reasonable security for such alimony and mainten-
ance, or to enforce the payment of such alimony and mainten-
ance in any other manner consistent with the practice of the
court. And the court may from time to time make such altera-
tions in the allowance of alimony and maintenance as shall
appear reasonable and proper. (Scates Stat., 151, Sec. 6.) Yet,
under this statute, similar in most respects to that of New Jer-
sey, the supreme court has held in many cases that courts have
power to assign, as alimony, to the wife a part of the real estate of
the husband, but has said at the same time that this should not be
done except under special circumstances, rendering such action
necessary for the support of the wife and children.

In Ohio, under a statute allowing alimony out of the hus-
band's real and personal property, "which may be allowed in
real or personal property," the supreme court held that, if
allowed in real property, it was not error to decree to her
the absolute title in fee. (*Broadwell* v. *Broadwell,* 21 Ohio St.
657.) Without a further examination of authorities, our con-
clusion is that if, in the proper accomplishment of the primary
object of the statute,—the support of the wife and children,—it
is reasonably necessary to invest the wife with the husband's

title to property; if, in other words, without an investiture of the title, the object of the statute will be defeated,—then the statute permits such investiture in the wife, as one of the means of securing her support.

In an action for divorce, where the complaining wife alleges her necessities and the defendant's abilities, and asks that certain particularly described real estate be set apart and decreed to her for her support, can the rule of *lis pendens* be invoked by the wife against one who purchases *pendente lite*, with actual notice of the divorce suit and other facts before stated? We think it can upon reason and authority. The statute provides that, if either party is about to do any act that may defeat or render less effectual any order which the court may ultimately make concerning property, an order shall be made for the preservation thereof. It is claimed that this remedy is exclusive; that, unless restrained, Powell's sale to defendant was valid. Our opinion is that this preventive remedy does not affect the ordinary rule as to purchasers *pendente lite*, if this is a case where that rule can be invoked.

"In order to bring the doctrine of *lis pendens* into effect, it is indispensable that the litigation should be about some specific thing, which must necessarily be affected by the termination of the suit * * * It is further essential to the existence of *lis pendens* that the particular property involved in the suit must be so pointed out by the proceedings as to warn the whole world that they intermeddle at their peril." (Freem. Judg., Secs. 196, 197.) The same author says: "*Lis pendens* is notice of all facts apparent on the face of the pleadings, and of those other facts of which the facts so stated necessarily put the purchaser on inquiry. (Id., Sec. 198.)

In many cases where, in divorce proceedings, the application is for alimony proper,—that is, an allowance to be paid at regular periods for the wife's support,—and especially where there was no statute allowing her any specific part of the husband's estate, it has been held that the rule of *lis pendens* does not apply because such a suit is *in personam*, and does not apply to any specific part of the personal or real estate of the husband. (*Almond* v. *Almond*, 4 Rand. (Va.) 662; 15 Am. Dec. 781; *Brightman* v. *Brightman*, 1 R. I. 112; *Feigley* v. *Feigley*, 7 Md. 562; 61 Am. Dec. 375.) But where the statute permits the husband's estate to be set apart to the wife for life, or, if necessary, in fee, for her support, and in her

complaint she specifically describes property which she asks the court to decree to her for her support, there seems to be no well-founded reason why the rule of *lis pendens* should not apply. True, it may be said that the decree of divorce is the first object of the suit, and that support is but an incident. But it is also true that when divorce is sought and granted, and support is required from the husband, the law permits the court, and it is the court's duty, to provide such support as is reasonable and just, under all the circumstances. In such a case, a purchaser *pendente lite*, with notice of the suit and its objects, knows that the property described may be decreed to the wife, and that one of the objects of the suit is to obtain a decree awarding such property to her. "The primary object for which the suit is brought is not material, provided the court has jurisdiction of the property for secondary purposes; and so it would seem that where a bill for divorce and alimony is filed by the wife against the husband, and there is no special allegation in it pointing out any particular property which is sought to be charged with the payment of the alimony, there will be no *lis pendens* as to either real or personal property of the defendant. Such a case cannot be distinguished from those where the action is professedly *in personam*, and where the contention in the case is entirely independent of any particular property. * * * If, however, the bill should contain special allegations,—should point out particular, real or personal property,—and, within the limits of the manifest jurisdiction and powers of the court to grant the relief, should seek to have alimony assigned out of such specific property, there would be constructive notice of the *lis pendens*." (Benn. Lis. Pend., Sec. 99; see, also, Sec. 219.) *Daniel* v. *Hodges*, 87 N. C. 98, supports the text just quoted. In *Ulrich* v. *Ulrich*, 3 Mackay, 290, the court followed *Daniel* v. *Hodges*, and held that while the rule is that, in a bill for alimony and maintenance, there is no *lis pendens* as to the property generally, yet where, as in that case, a certain lot is described in the bill, and it is alleged that the lot constitutes the principal property of the defendant, out of which alimony should be decreed, there is *lis pendens* as to such property. (And see *Draper* v. *Draper*, 68 Ill. 22; *Vanzant* v. *Vanzant*, 23 Ill. 543; *Tolerton* v. *Williard*, 30 Ohio St. 588; *Sapp* v. *Wightman*, 103 Ill. 158.) We are satisfied that the rule of *lis pendens* applies in

this case as to the property in question, and it follows that the defendant occupies the attitude of a *pendente lite* purchaser, and is therefore bound by the decree in the divorce case, and by all the proceedings therein that are not *coram non judice*, unless other facts existed which, if proven, would relieve him from the operation of the general rule.

This leads us to an exception taken at the trial, to the exclusion of testimony. On cross examination plaintiff was asked this question: "During the pendency of the divorce suit between you and Richard Powell, and before the trial of said cause, and before Powell sold the property to Campbell, at the house of George Anderson, in this county, did you not state to Richard Powell words as follows, or to this effect: 'You can sell the ranch if you wish to,' meaning the ranch sold to Campbell. 'I wish to God you would sell it, as it has always been a millstone around our necks?'" It was not claimed that these words, if uttered, were communicated to Campbell, and the court sustained plaintiff's objection to the question Counsel for appellant say: "The question is not one of estoppel of respondent, but authority in Richard Powell to sell. If the divorce proceeding suspended this authority, respondent's consent revived it." Since there is no element of estoppel in the case, the objection raised is easily disposed of. Powell required no authority from his wife or anybody else to sell He had the power to sell, and the sale as between him and Campbell was valid; but he could not affect her rights by a sale *pendente lite*, at least without a valid release or satisfaction of her claim for support, and neither release nor satisfaction was effected by her statement to Powell, if she made it. Nothing less than a valid contract, based upon a sufficient consideration, could release the property from the claim already impressed upon it. Suppose, pending the divorce suit, plaintiff had said to Powell, "You may keep the property,—I do not want it;" and Powell, without selling the property, had set up that statement in his answer to her claim for support, and had offered evidence showing what she stated. It would hardly be claimed that such a statement would have deprived her of provision for support, if at the trial she had insisted upon her rights. The court did not err in excluding this testimony.

At the close of plaintiff's case in chief, defendant moved the court to require plaintiff to make Richard Powell a party defend-

and to this action, and that he be brought in as a party defendant for the reason that the pleadings and proofs showed that a complete determination of the controversy could not be had without his presence. The motion was denied, and it is claimed that the court erred. We do not think so. In the divorce case, the court had jurisdiction of the person of the defendant and the entire subject-matter of the action. He did not answer or defend, but, in a legal sense, he had his day in court. Neither he nor Campbell, in this action, could assail the decree in the divorce case, or any proceeding therein, except for want of jurisdiction. The record before us does not show that in the divorce case the court exceeded its jurisdiction. Powell's rights were determined in that case, and could not be retried in this. Campbell had the same defenses that he and Powell would have had. The decree in the divorce case being in force, we are unable to see that Powell has any interest in this case, or is affected by the decree.

It is further urged that, "if the judgment in the divorce suit is valid and binding in so far as it attempts to vest title in respondent, then such title is complete by the terms of the decree, and respondent has a complete remedy at law, and this equitable action cannot be maintained; that a defendant cannot, by a transfer *pendente lite*, defeat the action; the plaintiff may notwithstanding, proceed to judgment and eject the assignee."

In support of the statement last made, three cases in ejectment are cited. Undoubtedly, in an action of ejectment, plaintiff prevailing, all persons entering under the defendant, *pendente lite*, may be dispossessed under the judgment. (Freem. Judg., Sec. 171.) But we are cited to no authorities holding that this may be done under a decree like that in *Powell* v. *Powell*, or that Mrs. Powell could have sustained ejectment against Campbell after obtaining her decree against Powell. Campbell had the legal title and possession. She had only an equitable right to both. The original equity doctrine was that a decree was not, of itself, a legal title, and did not transfer title. (3 Pom. Eq. Jur. Sec. 1317.) But in many of the states statutes have been passed providing that a decree shall operate as a conveyance. "When the object of a suit is to compel the conveyance of the legal title by the defendant, and the decree does not require a sale, the title will not pass until the deed is executed, unless it be provided, as has been done in some of the

states, by statute, that the decree itself shall operate as a convey-
ance." (*Miller* v. *Sherry*, 2 Wall. 248.)

It is probable that plaintiff might have made Campbell a
party to the divorce suit after the conveyance to him from
Powell, if she was aware of the sale —a fact not disclosed by the
record. Still, was she not entitled to maintain this action to
recover a conveyance by defendant of a legal estate correspond-
ing to her equitable title? (1 Pom. Eq. Jur., Sec. 152.)
Such actions have been sustained by the most distinguished
courts.

In *Bishop of Winchester* v. *Paine*, 11 Ves. 199, the court said:
" This is not the case of the legal estate acquired during the
pendency of the suit, in which instance it might be necessary,
in order to avoid it, to have recourse to a new suit." " Although
the maxim is, *pendente lite nil innovetur*, that maxim is not to be
understood as warranting the conclusion that the conveyance so
made is absolutely null and void, at all times and for all pur-
poses. The true interpretation of the maxim is that the con-
veyance does not vary the rights or the parties in that suit, and
they are not bound to take notice of the title acquired under it,
but, with regard to them, the title is to be taken as· if it had
never existed." " If, however, the purchaser *pendente lite* be a
purchaser of the legal estate, and not of a mere equitable estate, it
may, after the determination of the pending suit, be necessary,
in order to compel a surrender of his title, or to declare it void,
to institute a new suit against him." (2 Story Eq. Jur., Sec. 908,
and note 3.)

Besides, it is admitted by counsel for appellant that Campbell
could have been made a party defendant in the divorce suit, and,
if the facts and law warrant it, he could have been made to pass
the title to the property in question to plaintiff. The record does
not show that plaintiff knew, or had reason to know, of the convey-
ance from Powell to Campbell, before the trial, or until after it was
completed. It is shown by the court's findings that the divorce
suit was commenced in March, 1886; that during its pendency,
March 25, 1886, Powell conveyed to Campbell. But it nowhere
appears that plaintiff had any knowledge of the conveyance, or of
any facts making it incumbent upon her to make inquiries concern-
ing it, until after the trial.

The judgment and order appealed from are affirmed.