AUGUSTA L. WILKINSON v. JOHN B. ELLIOTT *et al.*

1. DIVORCE — *Alimony* — *Real Estate* — *Lis Pendens*. Where the wife files a petition asking for a divorce and for alimony, in which she definitely describes certain real estate of the husband, and prays that it may be set apart and decreed to her as permanent alimony, the doctrine of *lis pendens* will apply; and anyone who purchases such property during the pendency of the action will be bound by the judgment subsequently rendered therein.

2. PETITION — *File-Mark* — *Not Filed* — *Action, Not Pending*. Where a party temporarily hands a petition to the clerk of the district court, in order that he may place his file-marks thereon, and not for the purpose of allowing it to remain in official custody as a permanent record, and who does not ask for or obtain the issuance of a summons, but holds the petition in his own possession, away from the record, the action is not pending within the meaning of the statute on *lis pendens*.

3. ———— *Case, Followed*. The case of *Munger v. Baldridge*, 41 Kas. 236, holding that a married woman may appoint her husband by power of attorney as her agent to convey the inchoate interest which she holds in his real estate, followed.

*Error from Sedgwick District Court.*

ACTION to cancel a certain deed, and to quiet title. Judgment for defendants *Elliott* and another, at the May term, 1887. The plaintiff *Wilkinson* brings the case here. The facts appear in the opinion.

*George, King, Schwinn & Wood,* for plaintiff in error.

*John A. Murray,* and *C. Everest Elliott,* for defendants in error.

The opinion of the court was delivered by

JOHNSTON, J.: This was an action brought by Augusta L. Wilkinson against John B. Elliott and Alexander C. Wilkinson, for the purpose of canceling a certain deed conveying a quarter-section of land, which purported to have been executed by Wilkinson and the plaintiff to John B. Elliott on May 25, 1883, and to quiet the title to the land in her. Some

of the leading facts in the case are, that on February 19, 1883, the plaintiff and Alexander C. Wilkinson were then, and for a long time prior thereto had been, living together as husband and wife, and their family at that time consisted of six children. Some difficulty having arisen between them, they agreed to separate, and in the settlement made between them it was arranged that she should take a herd of cattle, and in turn should execute to him a power of attorney authorizing him to sell the real estate in controversy, the title to which stood in his name, and it had previously been occupied by them as their homestead. The power of attorney was executed on February 19, 1883, and was recorded on February 22, 1883. After the settlement was made, Mrs. Wilkinson moved from the land to a house in the same neighborhood, where she resided for a short time, and she subsequently went from there to the home of her father. On May 25 of the same year, Alexander C. Wilkinson negotiated and sold the land to John B. Elliott, and under and by virtue of the power of attorney mentioned, he conveyed her interest to the purchaser. The purchase-price of the land was about $2,200, which was made up in part of a mortgage upon the land of $700, and also of a judgment and some tax liens, which Elliott assumed. On May 21, 1883, Augusta L. Wilkinson, by her counsel, prepared a petition praying for a divorce from her husband, on the ground of gross neglect of duty, and praying also that the real estate in controversy should be granted to her by the court as permanent alimony. The petition was presented to the clerk of the district court, who placed his file-marks thereon, when it was immediately thereafter taken by counsel for plaintiff in error from the court and the possession of the officer. There was no *præcipe* for a summons filed, nor any summons issued, until May 25, 1883, and not then until after the conveyance to Elliott had been made. On the 24th day of May, and upon the application of Augusta L. Wilkinson, an order was granted by the district judge, at his chambers, restraining her husband from selling or disposing of this real estate during the pendency

of the divorce proceedings. But this order was not filed in the district court until the 25th day of May, nor served until the following day, and the testimony of the defendant in error tends to show that neither the order nor the original petition which had been filed was returned to the district court until after the transfer of the real estate in controversy was made to Elliott. On May 20, 1885, a divorce was granted by the district court, and in the judgment it was decreed that the land in controversy should be given to Augusta L. Wilkinson as permanent alimony. Soon afterward she brought the present action, and the district court, after a full hearing, upon the evidence offered, made a general finding in favor of the defendants, and denied the plaintiff the relief asked for.

Two points are made against the judgment: First, that the power of attorney executed by Mrs. Wilkinson, authorizing the conveyance of the land, was void for the reason that she was a married woman, and was therefore incapable of thus conferring authority on her husband to convey the land in controversy; and, second, that the conveyance of the land to Elliott was made during the pendency of the action for divorce and alimony, and that under the doctrine of *lis pendens* Elliott took the conveyance subject to any judgment that might be rendered in that action.

In regard to the first question, it has already been determined by this court that "a married woman may appoint her husband by power of attorney as her agent to convey the inchoate interest which she holds in his real estate; and an instrument duly executed by himself, and by him for her under such authority, is effectual to transfer such interest." (*Munger v. Baldridge*, 41 Kas. 236.) It is claimed that a different rule applies where the land attempted to be conveyed is a homestead; but this question we need not determine. After the settlement between Wilkinson and his wife, and before the conveyance to Elliott, they ceased to occupy the land as a homestead. There is some controversy in regard to whether the land retained the homestead character after the possession of the same had been surrendered;

3. Case, followed.

but in view of the general findings of the court in favor of the defendants, we must assume that the homestead was voluntarily abandoned by them; and hence the case of *Munger v. Baldridge* is an applicable and controlling authority. The power of attorney was sufficient in form, and after execution was immediately placed on record. It still remains a matter of record, and there has been no attempt to revoke the same in the manner required by statute. (Gen. Stat. of 1889, ¶ 1133.) There being no revocation, the power of attorney must, under the authority cited, be held valid and effectual.

The next inquiry is, whether the doctrine of *lis pendens* applies in actions for divorce and alimony, and whether Elliott was a *pendente lite* purchaser. In her petition for divorce and alimony, Mrs. Wilkinson stated at length the grounds of divorce; the necessity of alimony for the support of herself and family; and that this land, particularly describing it, constituted the principal property of the defendant; and she prayed that the rents of the land should be paid to her, and that the land itself should be decreed to her as permanent alimony. The law provides that when a divorce is granted to the wife on account of the fault of the husband, she shall be restored to all her lands which have not been disposed of, and shall be allowed such alimony out of her husband's real and personal property as the court shall think reasonable. (Civil Code, § 646.) The general rule is, that one who purchases from a party to an action the subject-matter of the litigation, is bound by the judgment subsequently rendered. It is essential to the doctrine of *lis pendens* that the litigation should be about some specific thing to be affected by the result of the action, and that the particular property should be so described and pointed out by the proceeding as to give notice to the whole world that they intermeddle at their peril. (Freeman on Judgments, §§ 196, 197.) It is contended that the doctrine has no application in actions for divorce and alimony, because the matter upon which the jurisdiction acts is the *status* of the parties, and not the disposition of the property. In our state, however, both questions may be the subject of litigation in the

same action. If a divorce is asked on account of the fault of the husband, the wife may ask not only that all her own land may be restored to her that has not been disposed of, but may describe particular property belonging to the husband, and ask that the same may be set apart for her as permanent alimony. When this is done, the property is made the subject-matter of litigation and is brought within the jurisdiction of the court, and anyone who purchases the same should be bound by the judgment or decree thereafter rendered. If in such an action there was no specific property pointed out, but only a general prayer for alimony, the doctrine would not apply, for the reason that the alimony might be awarded out of either real or personal property, and as no particular property was described and made the subject-matter of the litigation, no one could have notice that any particular property was involved. Although the courts are not in accord upon the question, the prevailing and better opinion is as stated by Bennett on Lis Pendens, § 99 :

1. Divorce—alimony—real estate—lis pendens.

"The primary object for which the suit is brought is not material, provided the court has jurisdiction of the property for secondary purposes; and so it would seem that where a bill for divorce and alimony is filed by the wife against the husband, and there is no special allegation in it pointing out any particular property which is sought to be charged with the payment of the alimony, there will be no *lis pendens* as to either real or personal property of the defendant. Such a case cannot be distinguished from those where the action is professedly *in personam*, and where the contention in the case is entirely of any particular property. The same results, of the advantage to the public—the same argument, founded upon public policy—would exist in the one class as in the other. If, however, the bill should contain special allegations— should point out particular real or personal property—and, within the limits of the manifest jurisdiction and powers of the court to grant the relief, should seek to have alimony assigned out of such specific property, there would be constructive notice of the *lis pendens*."

See also *Powell v. Campbell*, 20 Pac. Rep. 156; *Brightman v. Brightman*, 1 R. I. 112; *Daniel v. Hodges*, 87 N. C. 98; *Ulrich v. Ulrich*, 3 Mackey, 290; *Tolerton v. Williard*, 30 Ohio

St. 579; *Vanzant v. Vanzant*, 23 Ill. 536; *Draper v. Draper*, 68 id. 22; *Sapp v. Wightman*, 103 id. 150.

The question remains, however, whether the action of divorce was so pending at the time the land was transferred as to make Elliott a purchaser *pendente lite.* The plaintiff had executed a power of attorney conferring authority on Wilkinson to convey the land. It was conveyed before Elliott had actual notice that a proceeding for divorce was begun or in contemplation, as we are bound to assume from the finding of the court. The petition for divorce was prepared and indorsed as filed, it is true, before the sale was made; but, as we have seen, it was immediately taken from the office. No *præcipe* for summons was then filed, nor was the summons issued in the case until after the conveyance was made. The code prescribes that —

"When the petition has been filed, the action is pending so as to charge third persons with notice of its pendency, and while pending no interest can be acquired by third persons in the subject-matter thereof as against the plaintiff's title; but such notice shall be of no avail unless the summons be served or the first publication made within sixty days after the filing of the petition." (Civil Code, § 81.)

Was the handing of the petition to the clerk and his mere indorsement thereon a sufficient filing within the meaning of this statute? It seems to us that it cannot be so held. The filing contemplated by the statute is to place the petition in the custody of the clerk, there to remain subject to inspection by all interested parties. "File" meant at common law "a thread, string or wire, upon which writs and other exhibits in courts and offices are fastened or filed for the safe-keeping and ready turning to the same." (Wharton, Law Lex.; Bouvier, Law Dict.) The modern method of filing papers is to place them in the official custody of the proper officer to be kept as a permanent record, and the making of an indorsement thereon by the officer of the time they were received. According to Bouvier, "a paper is said to be filed when it is delivered to the proper officer and by him received *to be kept on file.*" The mere handing of a petition to an officer for indorsement, and

for a temporary purpose, cannot be regarded as a filing within the meaning of the statute of *lis pendens*.  It must be placed in the custody of the clerk as a permanent official record, and for the purpose of giving notice to all what is the nature and scope of the litigation.  The statute requires that all such papers shall be safely kept in the custody of the clerk; but in this case it would seem that the petition was not handed to the clerk to be received and kept by him as a permanent record.  It seems probable that for some reason the plaintiff did not desire the purpose and scope of the action to be known until an order of injunction could be obtained.  Her conduct, however, was such that a stranger to the action had no opportunity of informing himself what property, if any, was involved in her proposed action.  Shall she have the benefit of a notice based on an alleged record when by her own act she has rendered an examination or search of the record abortive ? Before the sale of the land, the defendant did in fact, through an attorney, make inquiry and search as to whether there was anything of record affecting the title to this real estate, and was told by the clerk that there was nothing, and no petition was found in the custody of the clerk, where such papers are kept when they are filed.  To adopt the rule invoked by the plaintiff would tend to the encouragement rather than to the prevention of fraud.  Before the doctrine of *lis pendens* will apply, the petition should be actually filed and made a permanent record, with the *bona fide* intention of proceeding with the prosecution of the action, and it should be kept on record, open to inspection by the whole world.  It is said that it is the intention and act combined which makes the filing of a petition or commencement of an action effective.  Under a statute which provides that the filing of a petition constitutes the commencement of an action, it was held that a petition delivered to the clerk of the court with instructions not to issue process until further instructions were given, is not the commencement of an action so as to prevent the running of the statute of limitations; and that it should be treated as having been left with the clerk in his individual capacity as

bailee. (*Maddox v. Humphries*, 30 Tex. 494; Bennett on Lis Pendens, § 42.) When the plaintiff handed her petition temporarily to the clerk, she did not ask for nor obtain the issuance of a summons, an essential step to the institution of an action. It was apparently the intention that the acts and purposes of the plaintiff should be concealed from all until the petition was finally returned and deposited with the clerk to be kept by him as a permanent record. It is our opinion that until the petition was permanently placed on record, with the *bona fide* purpose of diligently proceeding with the litigation, the action cannot be regarded as pending, within the meaning of § 81 of the code. Under the findings of the court, it must be held that Elliott had no actual notice of the allegations of the petitions or of the purposes of the plaintiff; and having neither actual nor constructive notice, he cannot be regarded as a *pendente lite* purchaser.

*2. Petition— file-mark— not filed— action not pending.*

The judgment of the district court will be affirmed.

All the Justices concurring.