(61 P.3d 728)

No. 88,089

ORVEY R. COUSATTE, Administrator of the Estate of Imogene Collier, *Appellee,* v. NATATIA R. COLLINS; COMMERCIAL FEDERAL MORTGAGE CORPORATION; YOUNG, BOGLE, McCAUSLAND, WELLS & BLANCHARD, P.A.; and MARLO E. GOERING and J. MICHAEL LEHMAN, d/b/a GOERING & LEHMAN, *Appellants.*

Opinion filed January 24, 2003.

*Nicholas S. Daily,* of Depew and Gillen, L.L.C., of Wichita, for appellants.

*Richard V. Foote,* of Richard V. Foote, P.A., of Wichita, and *Kiehl Rathbun,* of Rathbun Law Office, of Wichita, for appellee.

Before RULON, C.J., BEIER, J., and BRAZIL, S.J.

BEIER, J.: Defendants Natatia Collins and Commercial Federal Mortgage Corporation appeal a summary judgment in favor of plaintiff Orvey Cousatte in this quiet title action. Cousatte successfully invoked *lis pendens* to claim defendant Natatia Collins had notice the property she and her husband purchased was the subject of litigation.

A detailed review of the underlying facts is necessary to our analysis.

The property, a home on South Hiram in Wichita, was once owned by Cousatte's sister, Imogene Collier. Collier was a widow and, by all accounts, a woman of limited intelligence. After her husband's death, she was befriended by a neighbor, Carolyn Lucas.

In October 1996, Collier created the Imogene Collier Revocable Trust and deeded the South Hiram home to the trust. Collier and Lucas were designated as co-trustees, and the trust instrument provided that, upon Collier's death and payment of her debts and taxes, the residue of the trust would be distributed to Lucas.

Collier died on February 19, 1997. Cousatte, her only heir, was appointed administrator of her estate.

Cousatte filed suit against Lucas, who appeared in the caption as "Viola Carolyn Lucas a/k/a Carolyn Lucas." Cousatte alleged Lucas had exercised undue influence over Collier and sought to have the trust and any associated transfer documents set aside. The petition did not state that title to real estate was involved, and it did not specifically mention the South Hiram home, saying only:

"Plaintiff does not know the nature of the assets that were purportedly placed into the trust or what assets were transferred to the defendant, by some other means, at the date of Imogene Collier's death. Whatever assets that belonged to Imogene Collier, prior to the execution of the purported Trust document, and other assets either placed in joint tenancy, pay on death or other means transfer at death to the defendant are not valid and should be set aside by reason of the undo [sic] influence practiced by the defendant upon Imogene Collier."

Lucas prevailed after a bench trial. The district court's journal entry, filed on January 21, 1998, also did not mention any real estate or the South Hiram home. Cousatte appealed.

While the appeal was pending in this court, Lucas closed the trust accounts. She also entered into a contract with Jonathan D.

Collins to sell him the South Hiram home for $72,000. Jonathan Collins was the husband of defendant Natatia Collins; he is now deceased. Pursuant to the contract for sale of the home, Lucas obtained a commitment for title insurance from Columbian National Title Insurance Company ("Columbian Title") to insure Collins and his mortgagee, Mortgage Center, L.C.

On February 17, 1999, Columbian Title received copies of Collier's will and the trust instrument. Its file eventually also included a copy of the district court's January 21, 1998, journal entry, but it is unclear whether Columbian Title received the journal entry before closing on the sale of the South Hiram home.

On March 1, 1999, Lucas signed a trust affidavit—which stated she was authorized as trustee to "grant, bargain, sell, convey, execute, and deliver a deed, note and/or mortgage affecting" the South Hiram home "without any qualification whatsoever"—and the home sale closed. The warranty deed reflected a transfer from "Carolyn Lucas a/k/a Viola Carolyn Lucas, Trustee of the Imogene Collier Revocable Trust" to Jonathan D. Collins.

Mortgage Center, L.C., financed Collins' purchase, and both Jonathan and Natatia Collins signed the mortgage. Mortgage Center immediately assigned the mortgage to defendant Commercial Federal Mortgage Corporation ("Commercial Federal").

On January 21, 2000, a panel of this court issued a decision regarding Cousatte's appeal. Finding the district court erred in its analysis, the panel reversed and remanded the case for a finding regarding the existence of suspicious circumstances underlying the will and trust. *Cousatte v. Lucas*, Case No. 80,637, unpublished opinion filed January 21, 2000.

On remand, in July 2000, the district court determined that suspicious circumstances did surround the execution of the will and formation of the trust and that Lucas had failed to rebut a resulting presumption of undue influence. Collier's will and the trust were therefore null and void, and Cousatte was entitled to inherit the South Hiram home.

This outcome was eventually affirmed on appeal to this court. *Cousatte v. Lucas*, Case No. 86,463, unpublished opinion filed March 1, 2002. In the meantime, on October 10, 2000, Cousatte

filed this quiet title action against the Collinses and Commercial Federal, relying on *lis pendens*. See K.S.A. 60-2201.

The defendants moved for summary judgment, arguing Cousatte's 1997 petition did not specifically describe the South Hiram home and thus *lis pendens* did not apply. The district court rejected this argument, ruling in the alternative that (1) Cousatte's petition adequately described the South Hiram home and *lis pendens* applied; or (2) Columbian Title was the Collinses' agent for the purpose of investigating the title record, knew of the trust, and would have found out about Cousatte's lawsuit if it had adequately performed. As a result, Lucas' warranty deed to the Collinses was void, and Cousatte was entitled to quiet title in the South Hiram home.

## Lis Pendens

The Kansas *lis pendens* statute is K.S.A. 60-2201(a). It reads:

"When a petition has been filed in the district court pursuant to chapter 60 of the Kansas Statutes Annotated, the action is pending so as to charge third persons with notice of its pendency, and while pending no interest can be acquired by third persons in the subject matter thereof as against the plaintiff's claim . . . ."

Standing alone, this statute would require us to hold that defendants took their interest in the South Hiram home with constructive notice of Cousatte's prior claim through his 1997 lawsuit. However, Kansas case law has tempered the harshness of this rule by reading in three requirements that must be satisfied before constructive notice will arise: "(1) The property must be of a character to be subject to the rule of *lis pendens*; (2) the court must acquire jurisdiction both of the person and the property; and (3) the property must be sufficiently described in the pleadings." *Herman v. Goetz*, 204 Kan. 91, 97, 460 P.2d 554 (1969).

Defendants continue to argue on this appeal that Cousatte's summary description of the trust property in his 1997 petition places the existence of the third requirement in question. They correctly point out that *lis pendens* statutes are subject to strict construction and that the party invoking the doctrine bears the burden of proving that all of the requirements are met. 54 C.J.S., Lis Pendens § 5 and § 42.

We must compare the description Cousatte used in this case to those that have gone before it in other Kansas cases on *lis pendens*.

In *Wilkinson v. Elliott*, 43 Kan. 590, 23 Pac. 614 (1890), a wife sought a divorce from her husband, asking for a tract of real estate as permanent alimony, but her husband sold the subject real estate to another person at about the same time. One of the issues reviewed by the Kansas Supreme Court was whether the divorce petition had sufficiently described the real estate to qualify the case for application of *lis pendens*:

"Where the wife files a petition asking for a divorce and for alimony, in which she definitely describes certain real estate of the husband, and prays that it may be set apart and decreed to her as permanent alimony, the doctrine of *lis pendens* will apply; and anyone who purchases such property during the pendency of the action will be bound by the judgment subsequently rendered therein." 43 Kan. 590, Syl. ¶ 1.

"It is essential to the doctrine of *lis pendens* that the litigation should be about some specific thing to be affected by the result of the action, and that the particular property should be so described and pointed out by the proceeding as to give notice to the whole world that they intermeddle at their peril. [Citation omitted.]" 43 Kan. at 593.

The court observed a divorce petition containing only a general prayer for alimony and no specific mention of any real estate would be insufficient, 43 Kan. at 594, and finally held the *lis pendens* doctrine also did not apply because the wife had failed to file her petition with the clerk until after the sale. 43 Kan. at 596-97.

Similarly, in *Graham v. Pepple*, 129 Kan. 735, 284 Pac. 394 (1930), a wife filed a petition for divorce asking for 53⅓ acres in Washington County as alimony. The husband later sold this land to a third party. The Kansas Supreme Court held the real estate was sufficiently described for purposes of *lis pendens* because the husband owned only one 53⅓-acre tract in Washington County: "If the derelict husband had owned a hundred acres and she had merely laid claim to some undefined portion of it," there may have been sufficient ambiguity in the description to uphold the transfer to the third party. 129 Kan. at 737; see also *Rumsey v. Rumsey*, 150 Kan. 49, 90 P.2d 1093 (1939) (holding divorce petition giving

full legal description specific enough to generate *lis pendens* effect).

In the context of mechanic's liens, which also must contain a description of the real estate to which the lien attaches, see K.S.A. 60-1102, the Supreme Court held in *Sutherland Lumber Co. v. Due*, 212 Kan. 658, 660-61, 512 P.2d 525 (1973), that " '[O]ne barn and the surrounding tract of land belonging to Mr. and Mrs. L. E. Due of Rural Route 1, Centerville, Kansas,' " was "so vague, so general and so uncertain as to give little if any notice of the land's location to interested parties." The court arrived at this conclusion in part because the Dues owned four parcels of land in three different locations. 212 Kan. at 661.

The descriptions at issue and ultimate outcomes of these cases compel us to conclude that application of *lis pendens* in Kansas requires a much more specific description of the subject real estate than that found in Cousatte's 1997 petition. Because he failed as a matter of law to meet his burden to demonstrate that all of the requirements for application of the statute were met, the district court's judgment in his favor on *lis pendens* must be reversed.

### *Agency*

We also briefly address the district court's alternate holding in Cousatte's favor: Columbian Title was the agent of the Collinses and could have found out about Cousatte's lawsuit if it had performed adequately. Evidently, to the district judge, this "nearly actual knowledge" also entitled Cousatte to prevail in this quiet title action. See *Rumsey*, 150 Kan. at 54 (one who acquires interest in property with actual notice of prior adverse claim takes subject to claim); *State v. One 1978 Chevrolet Corvette*, 8 Kan. App. 2d 747, 751, 667 P.2d 893 (1983).

In our view, the district court's attempt to resolve the issue of actual notice, "nearly" or not, was without factual support in the record, and it is little wonder. Cousatte had not asserted this theory in his petition to quiet title. Nor did he move for summary judgment with this argument as support.

There simply are no facts at this stage to support a holding that Columbian Title acted in the interest of the Collinses rather than

itself when investigating—or not investigating—the chain of title to the South Hiram home. There also are no facts to support that it acquired actual knowledge of Cousatte's pending lawsuit. Although we know at this point that the title company was aware of the trust and of Lucas' status as trustee, neither side can say when the copy of the district court's January 21, 1998, journal entry landed in Columbian Title's file. On the thin record of this case, we are not comfortable holding that the Collinses should be charged with actual knowledge if Columbian Title only "should have" put two and two together under the circumstances. This theory, if it can be supported at all, awaits further factual and legal development by the parties.

Reversed and remanded for further proceedings consistent with this opinion.