## A. D. RATHBURN v. H. H. HAMILTON.

1. AUSTRALIAN BALLOT LAW—*Filing Nomination Certificate.* Where a political party assembled in convention places in nomination a candidate for a county office, and the president and secretary of such convention execute and verify a proper nomination certificate, which is presented to the county clerk in due time to be filed, and is left with him for that purpose, it will be deemed to be filed, within the meaning of the Australian ballot law, although no indorsement of filing is written thereon, and although it is afterward mislaid or lost through the inadvertence or negligence of such officer.

2. CERTIFICATE, *Defective—Remedy.* Where a nomination certificate is found to be insufficient or inoperative, the defect may be corrected by the political party or persons making the original nomination, or by the executive or central committee of such party or persons, in the manner pointed out by § 9 of that law, at any time before election day.

*Original Proceeding in Quo Warranto.*

THE opinion herein, filed June 9, 1894, contains a statement of the material facts.

*W. J. Sturgis, F. J. Knight,* and *I. D. Young,* for plaintiff.
*A. W. Hicks,* and *A. H. Ellis,* for defendant.

The opinion of the court was delivered by

JOHNSTON, J.: This action was brought to determine who was entitled to the office of county commissioner for the first district of Mitchell county. A. D. Rathburn and H. H. Hamilton were rival candidates for that office at the general election held on November 7, 1893. The total number of votes cast for the office was 799; and, according to the canvassed returns, Hamilton received 445 votes while Rathburn received 354 votes. Hamilton was declared elected to the office, of which he has taken possession, and is now discharging the duties and receiving the emoluments thereof. In his petition, Rathburn alleges that he was eligible to be elected to the office of county commissioner, and that he received a majority of the legal votes cast in the district for that office; and it is further alleged, that Hamilton was not legally nominated, but that the county clerk, without authority, and to the injury of the plaintiff's rights, caused Hamilton's name to be printed upon the official ballots for the district as the candidate of the people's party; that the official ballots, with defendant's name printed thereon, were voted by the electors of the district, and, although unauthorized and illegal, they were counted and canvassed as lawful and regular ballots; that, upon a return of the votes so cast, Hamilton was declared elected, and a certificate of election was unlawfully issued to him by the county clerk; that thereafter Hamilton filed an oath of office and a bond, and entered upon and is now exercising the duties of the office.

In his answer, Hamilton alleged that, on September 16, 1893, at a convention of the people's party, he was duly nominated as the candidate of that party for the office of county commissioner, which nomination was ratified and confirmed by the unanimous vote of all the delegates present in the con-

vention.   C. W. Culp, one of the delegates, was made chairman of the convention, and H. S. Chapel, another of the delegates, was made secretary, and these parties were afterward respectively chosen by the delegates as the chairman and secretary of the committee of the people's party for that commissioner district, and they were also named as the executive committee of that party for that district.   On September 16, 1893, it is alleged that the president and secretary of the convention made and executed a certificate of nomination, setting forth that Hamilton was duly nominated for the office of commissioner, which certificate was duly sworn to by both said Culp and Chapel before an officer qualified to administer oaths.   And it is further alleged,

"That on the same day that said certificate was prepared as aforesaid, the same was taken by said Culp and said Chapel to the office of the county clerk of said Mitchell county for the purpose of being filed with said clerk, and, as defendant is informed and believed, said certificate was then and there left with said clerk to be filed, but that, without any intention of wrong or neglect on the part of said county clerk, the said certificate was, after being left with him for filing, inadvertently mislaid and lost, and has not since been found, and, although diligent search has been made therefor, the said certificate cannot be found."

It is then alleged that neither Culp, Chapel nor the defendant had any knowledge that the certificate had not been in fact filed by the clerk until October 31, 1893, when they prepared and verified a certificate of nomination in due form and filed the same with the county clerk, but that officer declared the paper to be insufficient and inoperative because it had not been filed in his office within 20 days previous to the election had November 7, 1893.   Afterward, and upon October 31, 1893, Culp and Chapel, as chairman and secretary of the executive committee of the people's party for the first district, properly executed a nomination paper which recited the nomination of Hamilton on September 16, 1893, the fact that the county clerk had declared the nomination ineffectual and in-

operative because the certificate of nomination had not been filed in due time, and then it proceeded as follows:

"We hereby nominate as candidate for the people's party, for commissioner of the first commissioner district, H. H. Hamilton, of Plum creek township, Mitchell county, Kansas, as provided in section 9, chapter 78, Session Laws of the state of Kansas, 1893."

This nomination paper was verified by the officers making it, and was filed with the county clerk on October 31, 1893. Objection being made to the sufficiency of this nomination paper by W. J. Sturgis, a citizen and elector of Mitchell county, the interested parties appeared before the county attorney, clerk of the district court, and county clerk, on November 2, 1893, when the objection was heard and the facts connected with the nomination were considered; whereupon it was found that Hamilton was the legal nominee of the people's party, and it was decided that the objection filed was without merit. There is a further averment in the answer that plaintiff, being a minority candidate, has no interest in the office now held by the defendant, and no legal capacity to sue or maintain an action against the defendant. The plaintiff filed a demurrer to the answer of the defendant, alleging that it did not state facts sufficient to constitute a defense to the action, and upon the pleadings the cause was submitted to the court.

On these facts the contention is, that the nomination certificates and papers are insufficient; that they did not authorize the placing of Hamilton's name on the official ballot, and therefore that the votes cast for him were illegal, and should have been discarded by the officers who canvassed and declared the result. It appears that Hamilton was duly nominated by the convention of his party, his name was placed upon the official ballot, and a considerable majority of the votes cast were in his favor. Was there such a departure from the legislative requirements, in reference to nomination, as to defeat the expressed will of the electors? It is averred that the presiding officer and secretary of the convention exe-

cuted a certificate of nomination, which appears to have been substantially in the form required by the statute. It stated the name of the candidate, the office to which he was nominated, and the party which he represented, and added thereto was the name of the township in which he resided. It is alleged that this certificate was signed by the officers of the convention, and that to each signature was added the place of residence of such officer. The certificate thus prepared is alleged to have been duly sworn to by the officers, and the oath duly annexed to the certificate, when it was taken by them to the office of the county clerk for the purpose of being filed by the clerk, and was left with him for that purpose.

It thus appears that Hamilton was duly nominated, and, if the facts are as alleged, a proper certificate of nomination was executed, presented to the county clerk for filing, and left in his custody to be kept on file among the papers of his office. In our view, this constituted a filing, within the meaning of the statute. The convention officers had done all that the law required of them. A paper is said to be filed when it is delivered to the proper officer and by him received to be kept on file. (*Wilkinson v. Elliott*, 43 Kas. 595.) The mere indorsement upon the paper of the time of filing it by the county clerk is not an essential act of filing. It is a mere memorandum of the time of filing, and not the filing itself. As the answer points out in detail what was done with the certificate, and since those acts are deemed to constitute a filing, the averment that it was not in fact filed by the clerk is interpreted to mean that the filing was not indorsed thereon.

1. Australian ballot law— filing nomination certificate.
The nomination certificate is not rendered nugatory by the inadvertence or neglect of the filing officer. It is generally held that the duties imposed upon a filing officer of indorsing and recording a paper do not constitute any part of the filing, so far as the party delivering the paper is concerned, and that the rights of interested parties should not be prejudiced by the inadvertence or neglect of the officer to indorse the evidence of filing upon the paper. (*Wilkinson v. Elliott*, supra; *Imple-

*ment Co. v. Parlin & Orendorff Co.*, 51 Kas. 576; 7 Am. & Eng. Encyc. of Law, 962.)

It is alleged that the certificate was inadvertently mislaid and lost; but if the nomination was made, and if a sufficient certificate of that fact was made and filed, the loss might be supplied or proof of its contents made, as in case of other lost papers. If, however, the certificate was insufficient, or for any cause became inoperative by reason of being mislaid or lost, the statute provides a method for making a nomination and certificate that will be deemed sufficient. In § 9 of the Australian ballot law, it is provided that, in case a candidate who has been nominated dies before election day, or declines the nomination, or should any certificate of nomination be held insufficient or inoperative, the vacancy or defect may be filled or corrected by the political party or persons making the original nomination; or, if the time is insufficient therefor, it may be done in the way provided for by the convention, primary meeting or caucus which had previously made the nomination; or, where no such provision is made, then by the executive or central committee of the party or persons which held such convention, primary meeting, or caucus. As will be seen, the limitations of time have no application to the filling of such vacancies, or the supplying of nomination papers that have been held insufficient or inoperative. It may be done at any time before election day; and other provisions of the statute show that, after the vacancy is filled or the defect corrected, new ballots should be printed, if it is practicable to do so, but if this cannot be done, the new names may be placed on the ballots by affixing a paster, or by writing or printing the names upon the ballots already printed. (Laws of 1893, ch. 78, §§ 9–12.) This provision prevents the frustration of the purposes of a party or of a section of electors who desire to have the name of a candidate upon the official ballot. Neither the death nor the declination of a nominee deprives them from having a candidate to vote for. It prevents the accomplishment of a wrong through an inadvertent mistake or the willful action of an officer or

*2. Certificate, defective— remedy.*

committee, or by the withdrawal of a nominee at a late day, made in the interest of an opposing party, or for any other reason.

In this case, it appears that the county clerk held the nomination certificates which were filed to be insufficient and inoperative, and on October 31, seven days before the election, nominating papers were filed which seem to comply with the provisions of § 9. Upon a hearing of objections to these papers, the officers whose duty it was to consider them decided that the papers were sufficient; and § 10 of the act provides that their decision as to the objections is final. If for any reason the certificate first filed should be found insufficient, or that it had become inoperative, the subsequent steps taken appear to warrant the placing of Hamilton's name on the official ballot. This action and decision were taken prior to the printing of the ballots, his name was placed thereon, and, under the circumstances, it cannot be held that the votes cast for him were void.

An elaborate and well-reasoned argument is made to sustain the proposition that the provisions of the Australian ballot law should be regarded as mandatory, and strong reasons are given to sustain the view that at least every essential provision should be so treated. The view which we have taken, however, in regard to the sufficiency of the certificate makes it unnecessary to enter upon a discussion of that question or some other questions that are raised in the briefs of counsel.

We are of opinion that the facts stated in the answer constitute a complete defense to the action begun, and that the plaintiff's demurrer thereto should be overruled.

All the Justices concurring.