NORRIS *et al.* v. CROSS, *Secretary of State.*

No. 937.    Opinion Filed December 7, 1909.

(105 Pac. 1000.)

1.  **STATUTES—Enactment—Referendum Petition—Sufficiency of Filing.** When referendum petitions are offered, under the provisions of the act of the Legislature approved April 16, 1908 (Sess. Laws 1907-1908, p. 440, c. 44), to the Secretary of State for filing, and are received by said officer for such purpose, and retained in his custody among the records of his office, the same will be deemed to have been filed although no indorsement of filing is made thereon by said officer, and although he failed to detach the sheets containing the signatures and affidavits, and cause them all to be attached to one or more printed copies of the measure in the presence of the Governor and of the person offering the same for filing as directed by section 3 of said act.

2.  **STATUTES—Enactment—Referendum Petition—Filing—Mandatory Provisions.** The provisions of section 3 of said act requiring the Secretary of State, when any referendum petition shall be offered for filing, to detach, in the presence of the Governor and the person offering the same for filing, the sheets containing the signatures and affidavits, and cause them all to be attached to one or more printed copies of the measure proposed by the referendum petition, are mandatory as to the Secretary of State, but directory as to the public, and the failure of the Secretary of State to perform such duty does not invalidate the petition.

3.  **STATUTES—Enactment—Referendum—Acts Subject—Constitutional Provisions.** The provision of section 1, art. 5, of the Constitution, reserving to the people the "power at their own op-

tion to approve or reject at the polls any act of the Legislature" is modified and limited by sections 2, 3, 4. and 58 of said article, so as to apply only to acts which have not become operative.

4.  **STATUTES—Time of Taking Effect—Initiative and Referendum —Constitutional Provisions—Construction.** Section 58, art. 5, of the Constitution provides: "No act shall take effect until ninety days after the adjournment of the session at which it was passed except enactments for carrying into effect provisions relating to the initiative and referendum, or a general appropriation bill, unless, in case of emergency, to be expressed in the act, the Legislature, by a vote of two-thirds of all members elected to each house, so directs. * * *" Held, that the clause of exception reading: "Except enactments carrying into effect provisions relating to the initiative and referendum"—should be strictly construed, and includes only acts whose sole purpose is to carry into effect provisions relating to the initiative and referendum.

5.  **MANDAMUS—Executive Officers—Ministerial Acts.** A writ of mandamus may lawfully issue, from a court having jurisdiction, to compel an executive officer to perform a mere ministerial act, which does not call for the exercise of his judgment or discretion, but which the law gives him the power and imposes upon him the duty to do.

6.  **MANDAMUS—Executive Officers—Exercise of Discretion.** A writ of mandamus may issue to require an executive officer to act and decide even though his act and decision involve an exercise of his judgment and discretion, but it may not direct in what particular way he shall act or decide.

7.  **MANDAMUS—Secretary of State—Filing Referendum Petition.** The duties of the Secretary of State to file referendum petitions when presented to him, and to detach in the presence of the Governor and the person offering them for filing the signatures and affidavits, and cause them all to be attached to one or more printed copies of the measure proposed by the referendum petition, are purely ministerial; and, upon refusal to perform same, he may be compelled to do so by mandamus.

8.  **MANDAMUS—Secretary of State—Contest of Referendum Petition—Hearing.** The power conferred and duty imposed upon the Secretary of State by section 6 of the act of the Legislature approved April 16, 1908 (Sess. Laws. 1907-1908. p. 444, c. 44), whenever a referendum petition shall have been filed with him, to proceed at once to examine into its sufficiency, and, upon objections being filed to the sufficiency thereof, to hear evidence and argument in support of and in opposition to the petition, involve the exercise of judgment which cannot be controlled by mandamus; but if said officer, upon the referendum petitions having been filed with him and objections made thereto, refuses, upon request of the parties filing the petitions, to proceed to hear the protests and examine the sufficiency of the petitions,

he may be compelled by mandamus to act and decide, but cannot be directed in what particular way he shall decide.

(Syllabus by the Court.)

Petition for mandamus by Joe H. Norris and others against Bill Cross, Secretary of State. Writ granted.

*John H. Burford,* for petitioners.—Citing: 19 Cyc. 530; *Naylor v. Moody,* 2 Blackf. (Ind.) 249; *Wilkinson v. Elliott,* 43 Kan. 590; *State v. Hockaday,* 98 Mo. 590; *Betteson v. Budd,* 21 Ark. 578; *Railway Co. v. Walton,* 42 Fla. 54; *Peterson v. Taylor,* 15 Ga. 484; 13 A. & E. Enc. L. 13; *State Board of Equalization v. People ex rel.,* 191 Ill. 528; *Atty Gen. v. Boston,* 123 Mass. 460; *State ex rel. v. Railway Co.,* 19 Wash; 518; *Hentz v. Moulton,* 7 S. Dak. 272; *Comm'rs v. King,* 13 Fla. 457; *Commw. ex rel. v. Comm'rs,* 37 Pa. St. 237; *State ex rel. v. Cornwall,* 97 Wis. 565; *Lewis v. Christun,* 101 Va. 135; *Mester v. Spartanburg,* 68 S. C. 26; *State ex rel. v. Auditor,* 39 Minn. 426; *State ex rel. v. County Judge,* 7 Iowa, 186; *Opinion of the Justices,* 68 Me. 587; McCrary on Elections (3d Ed.) sec. 190; *State v. Russell,* 34 Neb. 116; *Jones v. State ex rel.,* 153 Ind. 440; *Railway Co. v. Hall,* 91 U. S. 343; *Elliott v. Pardee,* 65 Pac. 1087; *Good v. Common Council* (Cal.) 90 Pac. 44; *Higgins v. Brown* (Okla.) 94 Pac. 703; *Stearns v. State* (Okla.) 100 Pac. 909; *Palmer v. Benson* (Ore.) 91 Pac. 579; *Stevens v. Benson* (Ore.) 91 Pac. 577

*W. A. Ledbetter,* for respondent.—Citing: *Frantz v. Autry* (Okla.) 91 Pac. 193; *Mississippi v. Johnson,* 4 Wall. (U. S.) 475; *Georgia v. Stanton,* 6 Wall. (U. S.) 50; *Waterworks Co. v. New Orleans,* 164 U. S. 471; *State ex rel. v. Superior Court* (Wis.) 81 N. W. 1046; *Gas. Co. v. City of Des Moines,* 44 Iowa, 505; *People ex rel. v. Mills* (Colo.) 70 Pac. 322; *State ex rel. v. Thorons,* 33 L. R. A. 582; *State v. Gates* (Mo.) 89 S. W. 881; *McMurtry v. Byrd* (Okla.) 101 Pac. 117.

Hayes, J. This is an original action in this court in which relators ask for a peremptory writ of mandamus against respondent, as Secretary of State, to compel him to stamp as filed, and to examine and ascertain the sufficiency of certain referendum pe-

titions alleged to have been filed with him, requesting that the act passed by the Second Legislature, known as Senate Bill No. 179, be referred to the people for their approval or rejection. There is but little, if any, controversy about the facts in this proceeding, and it is unnecessary to state in full the pleadings. At the second session of the Legislature there was enacted what is known as Senate Bill No. 179, entitled "An act relating to the time, manner, and means of holding elections," which act was approved by the Governor on the 25th day of March, 1909. Sess. Laws 1909, p. 237, c. 16, art. 1. Within 90 days after the adjournment of the session qualified electors of the state, among whom were relators, delivered to the Secretary of State, at his office, during office hours, for the purpose of being filed, 1,571 pamphlets or petitions containing the request of about 31,000 electors of the state, asking that said Senate Bill No. 179 be referred to a vote of the people for their approval or rejection. No contention is made in this proceeding as to the regularity of the form and contents of said petitions, or that same have not been signed by a sufficient number of electors. Said petitions are in separate pamphlets, and none of them contain more than 20 names. Some of them contain fewer than that number. Each of said petitions contains a copy of the act which petitioners seek to have referred to the people for their approval or rejection. When the petitions were delivered by relators to the Secretary of State for filing, the sheets containing the signatures of the petitions were not detached from the printed copy of the measure proposed to be referred, and all attached to one or more printed copies of said measure, as is directed to be done by section 3 of an act of the Legislature entitled "An act to provide for carrying into effect the initiative and referendum powers reserved by the people in articles 5 and 18 of the Constitution of the state of Oklahoma, to regulate elections thereunder, and to punish violations of this act." Sess. Laws, 1907-1908, p. 442, c. 44. Within the time provided by law persons appeared before the Secretary of State, and made objections in writing to the sufficiency of the petitions, and relators, who are also signers of said petitions, re-

quested the Secretary to hear said objections, and to pass upon the sufficiency of the petitions, but respondent refused to act, giving as his reasons therefor, first, that the petitions had never been filed in his office as required by law; and, second, that the act which the petitions attempt to have referred carries into effect certain provisions of the Constitution relating to the initiative and referendum, and is not for that reason subject to the referendum.

The propositions which this proceeding presents for our determination are: First. Were the petitions filed with the Secretary of State within the time and in sufficient compliance with the law to require the Secretary of State to proceed to determine their sufficiency, and to act thereon as directed by the statute? Second. Is the act attempted to be referred subject to the referendum? Third. Has this court jurisdiction to direct the Secretary of State by mandamus to discharge the duty imposed upon him to file referendum petitions and to determine their sufficiency as directed by the provisions of the act entitled: "An act to provide for carrying into effect the initiative and referendum powers reserved by the people in articles 5 and 18 of the Constitution. * * * " Sess. Laws 1907-1908, p. 440, c. 44. The more logical order of considering these propositions would probably require the question of jurisdiction to be determined first; but, under the view we take upon these respective propositions, it will be more convenient to consider them in the order named than otherwise.

Section 1, art. 5, of the Constitution of this state vests the legislative authority of this state in the Legislature, consisting of two houses, the Senate and the House of Representatives, but reserves to the people, first, the power to propose laws and amendments to the Constitution, and to enact or reject the same at the polls independent of the Legislature; and, second, the power at their own option to approve or reject at the polls any act of the Legislature. Section 2 of the same article designates the first power as the "initiative," and the second power as the "referendum." That section also provides that the referendum may be ordered either by petition signed by 5 per centum of the legal

voters, or by the Legislature, as other bills are enacted.    The referendum in this case has been invoked by petition.    Section 3, art. 5, of the Constitution provides:

"Referendum petitions shall be filed with the Secretary of State not more than ninety days after the final adjournment of the session of the Legislature which passed the bill on which the referendum is demanded.    *    *    *    Petitions and orders for the initiative and for the referendum shall be filed with the Secretary of State and addressed to the Governor of the State, who shall submit the same to the people.    The Legislature shall make suitable provisions for carrying into effect the provisions of this article."

In obedience to the direction of this provision of the Constitution, the First Legislature of the state passed an act providing for the carrying into effect the initiative and referendum provisions of the Constitution.    Sess. Laws, 1907-1908, p. 440.    This act was approved by the Governor on April 16, 1908, and for convenience, shall hereafter be referred to as the act of April, 1908.

By section 1 of this act it is provided:

"Referendum petitions shall be filed with the Secretary of State not more than ninety days after the final adjournment of the session of the Legislature which passed the bill on which the referendum is demanded."

Section 3 of this act provides:

"Each initiative petition and each referendum petition shall be duplicated for the securing of signatures, and each sheet for signatures shall be attached to a copy of the petition.    Each copy of the petition and sheets for signatures is hereinafter termed a pamphlet.    *    *    *    Not more than twenty signatures on one sheet shall be counted.    When any such initiative or referendum petition shall be offered for filing, the Secretary of State, in the presence of the Governor and the person offering the same for filing, shall detach the sheets containing the signatures and affidavits and cause them all to be attached to one or more printed copies of the measure so proposed by initiative or referendum petition; provided, all petitions for the initiative and referendum and sheets for signatures shall be printed on pages seven inches in width by ten inches in length, with a margin of one and three-fourths inches at the top for binding; if the aforesaid sheets shall be too bulky for convenient binding in one volume, they may be

bound in two or more volumes, those in each volume to be attached to a single printed copy of such measure; the detached copies of such measure shall be delivered to the person offering the same for filing.   *   *   * "                                                              |

The foregoing provisions constitute all the provisions of the Constitution and of the statutes upon the subject of when and how referendum petitions shall be filed.   When the petitions in the case at bar were delivered by relators to the Secretary of State for filing, that officer executed his receipt therefor over his official seal and signature, in which he stated that said petitions, giving their number, had been received and filed in his office as required by law.   It is now the contention of respondent that said petitions were never by him marked filed, and although said petitions are now in his possession in his office as Secretary of State, he has refused and now refuses to file same, for the reason that the person offering same for filing failed to present them to the Governor of the state before tendering them for filing, and for the further reason that the sheets containing the signatures and affidavits have never been detached, in the presence of the Governor of the state and of the person offering the same for filing, from the various petitions offered for filing and attached to one or more copies of the measure sought to be referred.

'   We find nothing in the Constitution or in the statute that supports the contention of respondent that, before referendum petitions may be filed, they must be presented to the Governor. The Constitution, as well as the statute, requires that they shall be filed with the Secretary of State not more than 90 days after the final adjournment of the session of the Legislature which passed the measure on which the referendum is demanded.   The language of the statute upon which defendant relies is that portion of the act of April, 1908, which states that, "when any such initiative or referendum petition shall be offered for filing, the Secretary of State, in the presence of the Governor and the person offering same for filing, shall detach the sheets," etc.   But this language will not bear the construction for which defendant contends.   It does not direct that the petition shall be presented to

the Governor, nor that the person offering the same for filing shall demand of the Governor that he do the things specified in the act. The framers of the Constitution and the people adopting it thought. it sufficient to require that the electors desiring to refer a measure should file their petitions with the Secretary of State, leaving it, it is true, within the power of the Legislature to enact such laws as might be thought necessary to safeguard the rights of the people, relative to this power reserved to them and to prevent fraud. The language of the Constitution and of the statute is that the petition shall be *addressed* to the Governor, not *presented* to him, and *shall be filed* with the Secretary of State. When the electors have prepared the petitions in the manner prescribed by the statute, and have obtained the number of signatures thereto required by the Constitution, and have offered the same to the Secretary of State for filing, they have discharged all the burdens the statute imposes upon them to entitle them to exercise the power of referendum upon the measure involved. The burdens of the statute then shift to the shoulders of the officers of the state. Up to this time all the acts required by the statute looking to the referring of any measure must be performed by the electors; but, when these acts have been performed by them, the Secretary of State must then move in the matter. It is the mandate of the statute that he then shall do certain things, to wit, in the presence of the Governor and the person offering the petition for filing he shall detach the sheets containing the signatures and affidavits, and cause them to be attached to one or more printed copies of the measure proposed to be referred. That the form of the petitions and the contents thereof shall be as the statute prescribes are duties imposed upon the electors, which they cannot shift to the officers of the state. The duty of preserving these petitions in the form prescribed by the statute is imposed upon the Secretary of State, to be done in the manner therein designated, and in discharging his duty under the statute, he cannot shift the burden to the electors of the state by requiring them to do certain things the statute says he shall do. The statute does not say that the person offering the petition shall have the Sec-

retary of State, in the presence of the Governor, to do the mentioned things, but says that the Secretary of State, shall do those things in the presence of the Governor. It became the duty of the Secretary of State, when the petitions had been filed with him, to obtain the presence of the Governor, and to proceed to do those things which section 3 of the act of April, 1908, directs him to do. At the time the petitions in the case at bar were filed with the Secretary of State, it appears that the Governor was present in his office, and his presence could have been obtained to witness the performance of those duties required by the statute of the Secretary of State had an effort been made to that end; and, in justice to the Secretary of State, it should be said that, so far as the facts in this record appear, his failure to request the Governor to participate in the discharge of this duty resulted from no misconduct or negligence on the part of said officer, but from a misinterpretation of the statute on his part as to the duties imposed upon him by it.

No complaint is made by respondent that his failure to discharge this duty was because of the refusal of the person, or persons, offering the petitions for filing to witness his acts, and we are therefore not called upon to decide in this case what the effect of the failure or refusal of a person, offering a referendum petition to be filed, to witness the act of the Secretary of State in detaching the sheets containing the signatures from the various petitions and attaching them to one or more printed copies of the measure would be. Things required by constitutional provision to be done precedent to, or in the exercise of, any power, are, by the weight of authority, held to be mandatory. Sutherland's Stat. Con. § 73. Of such provisions it has been said:

"If directions are given respecting the times or modes of proceeding in which a power should be exercised, there is at least a strong presumption that the people designed it should be exercised in that time and mode only; and we impute to the people a want of due appreciation of the purpose and proper province of such an instrument when we infer that such directions are given to any other end, especially when, as has been already said, it is but fair to presume that the people in their constitution have expressed

themselves in careful and measured terms, corresponding with the immense importance of the powers delegated, and with a view to leave as little as possible to implication." (Cooley, Const. Lim. [7th Ed.] p. 114.)

The time when referendum petitions shall be filed, the person to whom addressed, and the officer with whom filed have been fixed by the provisions of the Constitution, and an observance of the requirements of these provisions is mandatory. The petitions in this case are addressed to the Governor, were delivered for filing to the proper officer within due time, and were received by him for such purpose, but he failed to indorse the same as filed. An indorsement of a paper as filed, however, is not necessary to constitute the filing of such paper. A paper is filed when it is delivered into the actual custody of the officer designated by the statute, to be kept by him as a permanent record of his office, and the placing by the officer of his mark or indorsement upon such instrument is only a memorandum or evidence that the filing has been made. *Covington v. Fisher,* 22 Okla. 207, 97 Pac. 615; *State v. Heth,* 60 Kan. 560, 57 Pac. 108; *Rathburn v. Hamilton,* 53 Kan. 470, 37 Pac. 20; *Wilkinson v. Elliott,* 43 Kan. 590, 23 Pac. 614, 19 Am. St. Rep. 158; *Jacksonville St. Ry. Co. v. Walton et al.,* 42 Fla. 54, 28 South. 59; *Oats v. State,* 153 Ind. 436, 55 N. E. 226; *Bettison v. Budd,* 21 Ark. 578. Does the failure of the Secretary of State to detach, in the presence of the Governor and of the person offering the petitions to be filed, the sheets containing the signatures of the petitioners and his failure to attach them to a copy of the measure to be referred, and to combine them into one or more books, invalidate the proceeding to have the act referred? If the provision of the statute requiring the Secretary to perform this duty is mandatory, it does. If such statute is only directory, it does not.

The act contains no expressions specifically declaring the provision under consideration, or any other provision of said act of April, 1908, shall be mandatory. On the other hand, by section 21 of the act (Sess. Laws, 1907-1908, p. 452, c. 44) it is said:

"The proceeding herein described is not mandatory, but if

substantially followed, will be sufficient. If the end aimed at can be attained and procedure shall be sustained, clerical and mere technical errors shall be disregarded."

If the provision of the statute now under consideration is mandatory, it must be so by implication. To determine from the statute whether it is mandatory, it is necessary that we look to the subject-matter of the statute, consider the importance of the provision to be applied, and the relation of that provision to the general object intended to be secured by the act. The general purpose of the act is to provide a procedure for the exercise of the powers of the initiative and referendum, and to make effective the provisions of the Constitution relative to such powers. In so far as the act re-enacts constitutional provisions it is mandatory. By the mere re-enactment of a constitutional provision into a statute its character or force cannot be changed. But the provision of the statute which the Secretary has not obeyed does not exist as a part of the Constitution. To our mind, the object sought to be obtained by it was to direct a mode of proceeding by the Secretary of State with petitions filed with him, so as to preserve, in a systematic and regular order, the same as a part of the record of his office. Owing to the number of petitioners necessary to secure the reference of any act, to a vote of the people, it would be a physical impossibility, within the time provided by the Constitution, to secure the signatures of the required number of petitioners upon a single petition. The Legislature, for the purpose of rendering the constitutional provisions effective, in prescribing the procedure for obtaining petitioners, has authorized numerous petitions to be signed, none of which shall contain more than 20 signatures. These petitions are collected and filed separately with the Secretary of State. That it was intended by the act that these separate petitions should be filed is evidenced, we think, by the language of the act, which states that, "when * * * any such referendum petition shall be offered for filing, the Secretary of State, in the presence of the Governor, * * *" shall do certain things. The only petitions that are ever in the hands of the elector to be offered for filing are the separate petitions con-

taining not more than 20 names, and the act must have meant that when these petitions were offered for filing, the other things directed by the act should be done by the Secretary. Of necessity in this state, with its present and increasing voting population, under the provisions of the act, numerous petitions are required to be filed, which, as documents in the office of the Secretary of State in the form filed by the electors, are voluminous and unhandy for preservation and inspection by the public. To avoid this inconvenience the Legislature has, we think, intended to provide that the Secretary of State may combine these numerous petitions, in the presence of the persons specified by the act, into one or more books, in which form they can be easily preserved in his office, accessible to the inspection of the public, with less risk of loss, alteration, extraction, or fraud; that the only purpose of the act in requiring the acts of the Secretary to be done in the presence of the Governor and of one of the electors offering the petitions was that the interests of the public might be safeguarded, and the integrity of the procedure vouchsafed, by having the person selected by the petitioners as their representative to file the petitions, and a person of the high character of the Governor of the State to witness the proceedings of the Secretary by which the form of the petitions is altered and changed by him from the condition in which they are received to that form and condition in which they are ultimately to be retained in the archives of his office for preservation. Unless a fair consideration of a statute directing the mode of proceeding of a public officer shows that it was intended that compliance with the provision in relation to such procedure shall be essential to the validity of the proceeding, such statute is to be regarded as directory rather than mandatory. *Jones v. State.* 1 Kan. 273.

"Those directions which are not of the essence of the things to be done, but which are given with a view merely to the proper, orderly, and prompt conduct of the business, and by the failure to obey which the rights of those interested will not be prejudiced, are not commonly to be regarded as mandatory; and, if the act is performed, but not in the time or in the precise mode indicated, it will still be sufficient, if that which is done accomplishes the

substantial purposes of the statute." (Lewis' Sutherland's Stat. Con. par. 611.)

What is the essence of the thing required to be done in order to entitle the electors of the state to have referred to them for their approval or rejection any act of the Legislature? They shall express their desire by petition addressed to the Governor, filed with the Secretary of State within the time prescribed by the Constitution. The mode of preserving these petitions after they are delivered by the electors to the Secretary of State, which is the expression of their desire to vote upon any act, may add to the proper, orderly, and prompt conduct of a referendum proceeding and of the business of the office of Secretary of State. It may facilitate the inspection of such petitions by the public, and secure their preservation by making their extraction, alteration, or loss more difficult, but such acts of the Secretary do not pertain to the substance of the things to be done, and his failure to perform such duty has not injured or prejudiced the rights of any one. These petitions are now in the possession of the Secretary of State in his office, in the form filed there by relators, and the desire and request of the electors of the state relative to the exercise of the referendum upon Senate Bill No. 179 can be ascertained, and all of the substantial purposes of the statute providing for the referendum proceedings accomplished. The provisions of this statute being to our minds directory, that which the Secretary of State has omitted to do should yet be done, no reason appearing from the facts before us that it cannot be done. It has been suggested that no demand has been made upon him to perform the act which he has omitted. No demand from any of the petitioners, or from the persons offering to file the petition, other than a request to file the petition is necessary. The duty which the law commands him to perform is not in the interest of any individual. It is not one of a private nature, but is a public duty, affecting the people of the state at large. When the people of the state have expressed their desire for a referendum upon any act in the manner and within the time prescribed, the law demands of the Secretary of State that he shall do the

things that it directs, and his failure to act constitutes his refusal to do so, and he may be compelled by mandamus to perform such public duty without any other demand than that which the law makes upon him. *State Board of Equalization v. People ex rel. Goggin,* 191 Ill. 528, 61 N. E. 339, 58 L. R. A. 513; *People ex rel. v. Kipley,* 171 Ill. 44, 49 N. E. 229, 41 L. R. A. 775; *Heintz v. Moulton et al.,* 7 S. D. 272, 64 N. W. 135; *Commonwealth v. Commissioners,* 37 Pa. 237.

Is said Senate Bill No. 179, the act which relators and the other petitioners seek to refer to the people, subject to the referendum power? To answer this question requires a consideration and construction of several provisions of the Constitution. Section 1, art. 5, of the Constitution reserves to the people of the state the "power at their own option to approve or reject at the polls any act of the Legislature." The language quoted is indisputably comprehensive enough to include the act in question; but there are other subsequent provisions of the Constitution which modify and limit the general language of said section 1, and the difficulty arises in determining whether these subsequent provisions take this act from out the operation of section 1. Section 2, art. 5, referring to the powers reserved to the people by section 1, declares the first power to be the initiative, provides the per centum of legal voters necessary to propose any legislative measure, and then provides that:

"The second power is the referendum and it may be ordered (except as to laws necessary for the immediate preservation of the peace, health, or safety) either by petition signed by five per centum of the legal voters or by the Legislature as other bills are enacted."

Section 3 of the same article, among other things, provides that:

"Any measure referred to the people by the referendum shall take effect and be in force when it shall have been approved by a majority of the votes cast thereon and not otherwise."

The same section requires that referendum petitions shall be filed within 90 days after the adjournment of the session of the

Legislature at which the bill to be referred was passed, and section 58 provides that:

"No act shall take effect until ninety days after the adjournment of the session at which it was passed, except enactments for carrying into effect provisions relating to the initiative and referendum, or a general appropriation bill, unless in case of emergency, to be expressed in the act, the Legislature, by a vote of two-thirds of all the members elected to each house, so directs."

Section 4 of the same article reads:

"The referendum may be demanded by the people against one or more items, sections or parts of any act of the Legislature in the same manner in which such power may be exercised against a complete act. *The filing of a referendum petition against one or more items, sections or parts of an act shall not delay the remainder of such act from becoming operative.*" (Italics are ours.)

From all the foregoing provisions, we think it is apparent that the referendum provided for by the Constitution of this state is the right and power to approve or reject at the polls legislative propositions which have received favorable action by the Legislature, and have been referred to the people either by act of the Legislature or by petition of the people before the same have become operative. Their purpose was to provide a means of having the people give an expression upon a legislative proposition, and to require their approval thereof before the same should become operative as the law of the state, if such expression should be desired by the Legislature or by the people. An act to repeal a law might be initiated by the people independent of the Legislature, voted upon and approved or rejected by them; and a proposition having for its purpose the repeal of a statute, after having been passed by the Legislature, might be by the Legislature or by petition referred to the people for approval or rejection, but the matter referred and on which the people vote is not the law already in operation, but the legislative proposition to repeal such law.

If section 1 of article 5 stood alone, it would be difficult to perceive, without giving language used a meaning other than its natural sense indicates, that the right of referendum upon any act

could be defeated by the fact that such an act had become effective; but this section is only one of several contained in the same article which pertain to the powers reserved by that section, and affect the exercise thereof. They must all be read and construed together. They were all adopted as parts of one instrument, and they should not be construed separately, and each given its strict, literal meaning, when to do so will result in irreconcilable conflict.

"One part may qualify another so as to restrict its operation, or apply otherwise than a natural construction would require if it stood by itself; but one part is not to be allowed to defeat another if, by any reasonable construction, the two can be made to stand together." (Cooley, Const. Lim. p. 92.) See, also, Lewis' Sutherland's Stat. Con. par. 344.

If an act which has become effective at the time of its enactment may be referred, then that portion of section 3 declaring that any measure referred shall take effect and be in force when it shall have been approved by a majority of the votes cast thereon, "*and not otherwise,*" is meaningless. And that portion of section 4 which provides that when a referendum petition is filed against one or more items, sections, or parts of an act, the filing thereof shall not delay the remainder of such act from becoming effective is not adequate to supply a rule in all cases. We conclude that the power of the referendum, reserved in section 1, must be held applicable only to acts of the Legislature which have not become effective at the time the referendum is invoked by act of the Legislature or by petition.

Respondent contends that Senate Bill No. 179, or at least a part thereof, was in force at the time plaintiffs filed their referendum petition; that the same became effective upon approval of the Governor by virtue of section 58, art. 5, and the whole act is not subject to the referendum. The first sentence of section 58, art. 5, of the Constitution consists of a general enacting clause and an excepting clause. By the enacting clause no act of the Legislature becomes effective until 90 days after the adjournment of the session at which it was passed, but the excepting clause saves from the operation of the 90 days' clause of the section three classes of acts, to wit: First. Enactments for carrying

into effect provisions relating to the initiative and referendum. Neither section 58 nor any other section of the Constitution provides when these three classes of acts saved by the excepting clause shall become effective. The early rule was that statutes, when not otherwise ordered, took effect from the first day of the session at which they were enacted. But this rule is condemned by Judge Cooley as being purely arbitrary, based upon no good reason, and frequently working serious injustice. The same author declares the present rule to be that an act takes effect from the time when the formalities of the enactment are actually completed under the Constitution, unless it is otherwise ordered, or unless there is some constitutional or statutory rule on the subject which prescribes otherwise. Cooley, Const. Lim. p. 223. Under this rule any of the three classes of acts named in the clause of exception, in the absence of any provision in any such act otherwise directing, would become effective upon approval by the Governor, or in the case of his veto, upon the passage of such act by the legislators over the veto of the Governor by the required vote. Senate Bill No. 179 was not passed as an emergency measure. If it was in force at the time the referendum petitions were filed, it must be upon the ground that it contains provisions relating to the initiative and referendum. It contains some provisions which have for their sole object the carrying into effect the provisions of the Constitution relating to the initiative and referendum. It contains some provisions which accomplish this object and also have other purposes, and it contains other provisions which bear no relation whatever to the initiative and referendum provisions of the Constitution. The construction of the saving clause for which respondent contends is that any act containing any provision carrying into effect any provision of the Constitution relating to the initiative and referendum becomes, at least to such parts, immediately operative upon its passage and approval, and that since said Senate Bill No. 179 contains some such provisions, it was in force at the time the petitions for referendum were filed, and therefore not subject to be referred. Such construction of this clause is, we think, broader than the purpose and intent of

the framers and of the people in adopting the Constitution author-
izes.    Clauses of exception are to be strictly construed.    Lewis'
Sutherland's Stat. Con. p. 671; 26 Am. & Eng. Enc. of Law, p.
680, and authorities there cited.    In applying this rule of con-
struction, it is true, however, an unreasonable construction will
not be given a saving clause that will defeat the purpose for which
it was enacted.    It is therefore important to ascertain what was
the intent of the framers of the Constitution and of the people
adopting it in inserting the saving clause in said section 58.

We regret that the proceedings of the constitutional con-
vention have not been printed and are not accessible to this court.
But it is entirely probable that the framers of the Constitution,
with knowledge that the initiative and referendum powers as re-
served to the people by the Constitution had not, before the adop-
tion of the Constitution, existed in this jurisdiction, and that the
statutes extended in force in this state would be inadequate to
make effective these provisions, desired to provide a way for mak-
ing these provisions effective at once.    They had reason to expect,
and subsequent history has justified that expectation, that the
First Legislature of the state would be required, by necessity, to
enact a great volume of legislation, against some of which the
people of the state might desire to invoke the referendum.    But
if the acts which the First Legislature should pass putting in
force the constitutional provisions for the initiative and refer-
endum should not become effective until 90 days after the adjourn-
ment of that Legislature, then every other act of the Legislature
would become effective before any provision could exist for in-
voking the referendum against it. The provision for the initiative
and referendum exists in the Constitutions of only a few states
of the Union, and is of recent enactment in those states.    Mem-
bers of the constitutional convention of this state no doubt antici-
pated that the statutes first passed to make effective these pro-
visions would, in a great measure, be experimental, and might
prove entirely inadequate for the purpose.    By providing that
acts of any Legislature, for the purpose of carrying into effect
these provisions, might become effective earlier than the other

acts of the same Legislature, any Legislature would then have power to give to the people of the state an effective statute for the exercise of the referendum against any act passed by such Legislature. It was to accomplish this object, we think, that this class of acts putting in force the initiative and referendum provisions was saved from the 90 days' clause of section 58. But this purpose will not be defeated by a strict construction of the clause holding that it was intended that only acts whose sole purpose is to put in force the initiative and referendum provisions were intended to be excepted by this clause. Under this construction of the clause the First Legislature could have and did, and any subsequent Legislature, finding the existing laws inadequate for the enforcement of the initiative and referendum powers, may, pass an act whose only purpose is to remedy defects in existing statutes, and to provide an adequate procedure for the exercise of these powers, and the same will become effective immediately upon its passage and approval, and will be available for invoking and exercising the referendum against any act passed at the same session of the Legislature.

The word "enactment," as used in the saving clause, is synonymous with the word "act." It is to be noted that the language of this clause excepts only "enactments," and not "enactments or parts of enactments," putting in force the initiative and referendum provisions of the Constitution. The word "act," as used in the general enacting clause of section 58, means a bill passed by the Legislature, as to which all of the formalities required to make it a law have been performed, and refers to the entire statute enacted, and we think that the matters excepted from the general clause were of the same character, and it was intended to except the whole statute passed as one act for the purpose of putting in force the initiative and referendum provisions, and that it was not intended that a bill, whose object and purpose was other than mentioned in the saving clause, should be included because it contains some clause or section that incidentally or directly relates to the initiative and referendum provisions. Senate Bill No. 179 consists of 70 or more sections, only 4 of which deal directly with the initiative and refer-

endum. All the other sections pertain to matters, any law upon which it was unquestionably the intention of the framers of the Constitution, and the people who adopted it; should not become effective until 90 days after the adjournment of the session of the Legislature at which it was passed, unless passed as an emergency measure, and that the people should have the right of referendum thereon. To give to the saving clause the construction that any act containing a clause or provision that relates to the initiative and referendum becomes effective immediately, and is included and cannot be referred, would open the door for making numerous acts effective at once, and preventing the referendum thereon, that were not intended by the Constitution to be made effective until 90 days after the adjournment of the session at which they were passed, unless the emergency clause should be attached. A construction which is so in conflict with the purpose and spirit of the other sections of the Constitution relative to the referendum should not be given to this clause, but the strict construction should be applied. We, therefore, hold that only acts whose sole purpose is to put in force the initiative and referendum provisions are included within the clause of section 58, reading: "Except enactments for carrying into effect provisions relating to the initiative and referendum."

An act passed only for the purpose of putting in force the initiative and referendum provisions, or a general appropriation bill, becomes operative upon the completion of all the formalities required by the Constitution for its enactment, if it contains no provision, and there exists no general statute, fixing the time when the same shall become effective, and such act is not subject to the referendum, and can be destroyed only by a measure repealing the same, initiated and adopted by the people or enacted by the Legislature. But we do not wish to be understood as holding that the Legislature, in enacting a general appropriation bill, or an act for carrying into effect the initiative and referendum provisions, may not, by a specific provision in such bill, or by general statute, fix the time at which such act shall become effective, and that the people may not, during such time, file against such bill a referendum petition, and have the same referred to them for their ap-

proval or rejection. This question is not presented by this proceeding, and we desire so to limit the language of this opinion that it may not be construed as any expression thereon.

We have not overlooked the contention of counsel for defendant that the electors of the state should have petitioned to refer only those sections of Senate Bill No. 179 which do not have any relation to the initiative and referendum; that said sections are the only sections of the act which did not become effective at the time of the approval of the act by the Governor. To sustain this contention, it would be necessary, as previously stated, to make the saving clause of section 58 read "enactments 'or parts of enactments' for carrying into effect provisions relating to the initiative and referendum." That it was not intended by section 58 to authorize the passage of acts, parts of which should not become effective until 90 days after the adjournment of the session, and the other parts to become effective immediately after their enactment, the former parts being subject to the referendum and the latter not, we think is further demonstrated by an attempt to apply such a rule to the different provisions of Senate Bill No. 179. Subsection 1 of section 1 of the act (Sess. Laws 1909, p. 237, c. 16, art. 1) fixes the date of general elections for electing state, district, county, and township officers. Subsections 2 and 8, inclusive, of section 1 creates and provides for the appointment of a state election board and a county election board for each county of the state and an election board for each precinct of the counties, fixes their compensation, and prescribes some of their duties. The state, county, and precinct election boards created by these sections furnish the supplies with which to conduct all elections and canvass the returns thereof. These officers constitute the election officers for conducting other primary and general elections. It is not contended by defendant, nor do we think it could be with any show of reason, that an act or any part of the act, upon the subject dealt with in these sections of the act, fall within the saving clause of section 58. On the other hand, it is clear that a law upon these subjects does not become effective until 90 days after its passage, and is subject to the referendum, unless put in force immediately by an emergency clause.

But later provisions in the act pertaining to the initiative and referendum make it the duty of the boards created by these subsections of section 1 to conduct the elections and canvass the returns on propositions submitted by the referendum or the initiative. These subsequent provisions of the act, therefore, make the former sections that do not within themselves relate to the initiative and referendum provisions of the Constitution apply to such provisions, and provide for carrying them into effect, and therefore would, under the theory of defendant, become immediately effective upon their enactment, and would not be subject to the referendum.

Now which theory is to prevail as to these subsections of section 1—that which would apply to a general election law against which the people clearly have the right of the referendum, or that which would apply to a measure for carrying into effect the initiative and referendum which becomes effective immediately and precludes a referendum? The difficulty of the application of the rule contended for is more forcibly illustrated by examination of subsection 6 of section 3 of the act, which provides that at general and special elections "but one ballot shall be used and the names of all candidates and the ballot titles of all measures or questions submitted to the people shall be placed thereon." In so far as this section applies to elections for electing officers, it clearly does not fall within the saving clause, but, in so far as it applies to the initiative and referendum measures under defendant's contention, it would fall within that clause, and said section, therefore, would upon approval by the Governor be, and would not be, a law; at the same time, it would be and would not be subject to the referendum. Which feature of the section is to control—that which requires it not to go into effect for 90 days, and leaves it subject to the referendum, or that which makes it immediately effective and not subject to the referendum? If we say that its character as a referendum provision shall prevail, then the saving clause of section 58, which was intended to afford a means to prevent the right of exercising the referendum against any provision ever being defeated, is made the very means of accomplishing that defeat. But the construction which we think should be adopted by this court leads

to no such absurd consequences.   If it be said such construction prevents the provisions of Senate Bill No. 179 from becoming available to the people in the exercise of the referendum against acts passed at the last Legislature, because the operation of such bill is suspended, then the fault is with the Legislature.   The Constitution provides a method by which the Legislature might have, by separate act devoted exclusively to putting in force the initiative and referendum, made such provisions relative thereto as the Legislature deemed necessary, and the same would have become immediately effective upon its enactment.

When relators delivered to the Secretary of the State for filing the petitions of the electors asking for a reference of the act, and he accepted them for that purpose, it became his duty, under the provisions of the act of April, 1908, to file the same, detach the sheets containing the signatures and printed copies of the measure, and to proceed at once to examine into the sufficiency of the petitions.   When objections to the sufficiency of the same were made, it was his power and duty to receive testimony and argument, if any was offered, in support of or in opposition to the sufficiency of the petition.   It also became his duty to transmit forthwith to the Attorney General of the state a copy of the measure asked to be referred, for that officer to provide a ballot title to said measure and return to respondent.   Sess. Laws, 1907-1908, pp. 443, 444. All these things respondent refused to do.

Has this court jurisdiction to compel him by mandamus to discharge these duties?   Counsel for respondent, in a brief commendable for the learning and exhaustiveness with which the propositions involved in this proceeding are discussed, insists that these acts required of the Secretary are legislative functions, and that in the discharge of them he acts as a legislative officer and as a member of the legislative branch of the government, and is not subject to the jurisdiction of the courts.   No case that may be said to be directly in point has been called to our attention; nor have we, by extended and careful research, been able to find any.

The constitutional and statutory provisions of the state of Oregon reserving the powers of the initiative and referendum to

the people, and providing a procedure for the exercise of those powers, are very similar to the constitutional and statutory provisions on the same subject in this state. In *Palmer et al. v. Benson,* 50 Or. 277, 91 Pac. 579, a writ of mandamus was sought to compel the Secretary of the State to file a referendum petition, which he had refused to file because it did not contain the "warning clause" provided for by the statute, and for the further reason that it did not contain a full and correct copy of the title and text of the matter sought to be referred. The judgment of the lower court refusing the writ was reversed by the Supreme Court, and the peremptory writ issued. The question of jurisdiction does not appear to have been raised by counsel in that case, and no reference is made thereto in the opinion of the court. But since it was the duty of the court to take notice of any defect in its jurisdiction apparent upon the face of the pleadings, and since its lack of jurisdiction would have appeared from the pleadings, it may be safely assumed that the court entertained the view that it had jurisdiction to hear and determine the case upon its merits, which was done.

The Secretary of State is made by the Constitution of this state a member of the executive department (section 1, art. 6), but the supreme executive power is vested in the Governor. Section 2, art. 6. The duties of the Secretary of State fixed by the Constitution are:

"The Secretary of State shall keep a register of the official acts of the Governor, and when necessary, shall attest them, and shall lay copies of the same, together with copies of all papers relative thereto, before either house of the Legislature, when required to do so. He shall also perform such other duties as shall be prescribed by law."

No question is better settled by both the state and federal courts than that courts cannot control, by mandamus, injunction, or any other writ, the exercise of a purely legislative or executive power; but in the early case of *Marbury v. Madison,* 1 Cranch, 137, 2 L. Ed. 60, it was held that where an executive officer is not required to exercise discretion in the act to be performed, he may be compelled by mandamus to perform such act. There is much

division among the authorities as to whether the writ will lie to compel the Governor of the State, in whom is vested the supreme executive power, to perform even a purely ministerial duty, but as to the heads of the various other departments of the executive department, it is generally held that the writ will lie, and the Secretary of State may by this process be coerced to perform any duty not involving the exercise of discretion or judgment.  Merrill on Mandamus, par. 102; 26 Cyc. p. 252; *State ex rel. v. Crawford,* 28 Fla. 441, 10 South. 118, 14 L. R. A. 253.

A very interesting exposition of the extent to which such writ is available to control the action of executive officers occurs in *Kimberlin v. Commission to Five Civilized Tribes,* 104 Fed. 653, 44 C. C. A. 109.  In the absence of a better expression of the rule upon this question, supported by the weight of authorities, we quote from the opinion of Judge Sanborn in that case, with the authorities cited, the following:

"(1) A writ of mandamus may lawfully issue, from a court having jurisdiction, to compel an executive officer to perform a mere ministerial act, which does not call for the exercise of his judgment or discretion, but which the law gives him the power and imposes upon him the duty to do.  *Marbury v. Madison,* 1 Cranch, 137, 2 L. Ed. 60; *Kendall v. U. S.,* 12 Pet. 524, 9 L. Ed. 1181; *U. S. v. Schurz,* 102 U. S. 378, 26 L. Ed. 167; *Butterworth v. Hoe,* 112 U. S. 50, 5 Sup. Ct. 25, 28 L. Ed. 656.  (2) It may issue to command an executive officer to act and decide, even though his act and decision involve the exercise of his judgment and discretion; but in such case it may not direct him in what particular way he shall act or decide.  It may not lawfully issue to command or control an executive officer in the discharge of those of his duties which involve the exercise of his judgment or discretion either in the construction of the law, or in determining the existence or effect of the facts.  (3) It may not lawfully issue to review, reverse, or correct the erroneous decisions of an executive officer in such cases, even though there may be no other method of review or correction provided by law.  *Decatur v. Paulding,* 14 Pet. 497, 10 L. Ed. 559, 609; *U. S. v. Black,* 128 U. S. 40, 9 Sup. Ct. 12, 32 L. Ed. 354; *U. S. v. Guthrie,* 17 How. 284, 15 L. Ed. 102; *Commissioner v. Whiteley,* 4 Wall. 522, 18 L. Ed. 335; *Georgia v. Stanton,* 6 Wall. 50, 18 L. Ed. 721; *Gaines v. Thompson,* 7 Wall. 347,

19 L. Ed. 62; *U. S. v. Windom,* 137 U. S. 636, 11 Sup. Ct. 197, 34 L. Ed. 811; *U. S. v. Blaine,* 139 U. S. 306, 11 Sup. Ct. 607, 35 L. Ed. 183; *U. S. v. Lamont,* 155 U. S. 303, 15 Sup. Ct. 97, 39 L. Ed. 160."

See, also, 19 Am. & Eng. Enc. of Law, p. 372 *et seq.*

All the duties of respondent enumerated above, except the duty to hear protests against the petitions, to hear evidence and argument in support thereof and in opposition thereto, and to determine the sufficiency of the petitions are purely ministerial, and are all prescribed by the statutes. He has no discretion as to whether he will perform or not perform any of such duties. They are mandatory as to him. They are in the interests of the public, and the public has a right to have them performed. The power to receive protests against the sufficiency of the petitions, and to hear evidence and argument in support thereof, and to determine the sufficiency of the petitions involve the power to find facts and require the exercise of judicial or quasi judicial powers. It is not within the scope of a mandamus proceeding to coerce an executive officer in the discharge of a duty involving the exercise of judgment or discretion, or the exercise of judicial or quasi judicial power, further than to direct him to act. The court cannot supplant him in the determination of questions of fact or of law required by the statute to be determined by him, nor direct in whose favor his decision shall be. *Kimberlin v. Commissioners, supra; State ex rel. v. Chittenden et al.,* 112 Wis. 569, 88 N. W. 587.

Respondent, in the exercise of his duties relative to the initiative and referendum, cannot be likened to the subordinate officers of either branch of the Legislature. A subordinate officer of either branch of the Legislature, such as a clerk of the House of Representatives, is the officer only of that branch of the Legislature, and it has execlusive control and direction of his acts independent of the other branch of the Legislature. Any dereliction of duty on the part of such subordinate officer may be punished by the House of Representatives, and the evil effect of his misconduct or neglect may be remedied by immediate action of such branch of the Legislature by appointing another officer to perform the duty, or by

adopting other remedies necessary to correct the wrong perpetrated. In the control of such subordinate officer of either branch of the Legislature the courts cannot interfere. But a writ of mandamus to the Secretary of State cannot be likened to one directed to a subordinate officer of the House of Representatives, for in the latter case the House of Representatives has jurisdiction to direct its subordinate officers what they shall do and what they shall not do. For courts to attempt to exercise jurisdiction over them might often result in an officer of such legislative body being commanded by the court to do one thing, and by the branch of the Legislature of which he is an officer to do the opposite. Conflict and confusion would be the inevitable result. But no such jurisdiction exists in either branch of the Legislature over the Secretary of State. He is not an officer of either branch of the Legislature; nor is he a creature of either branch. The Constitution created his office and made him a member of the executive department. Those bodies, it is true, may fix his duties, but they must do so by statute. The House of Representatives may impeach, and the Senate may try him upon impeachment, for neglect of duty or misconduct in office. But that jurisdiction is in no way interfered with by the exercise of the jurisdiction of courts to compel such officer by mandamus to discharge a ministerial duty imposed upon him by statutory or constitutional provision. Because he, in the discharge of some of his duties, may perform acts that are necessary to the passage of a law by direct vote of the people affords no more reason for classing him as a legislative officer, or his acts as legislative acts, than the acts of those officers performing ministerial duties pertaining to elections in electing members of the Legislature who enact the laws of the state. His relation to the public in the performance of these duties differs from those of such election officers only in the remoteness of the act required to be performed by them to the real act of legislation. The duties of both are fixed by statute. If the acts of the Secretary in filing, determining the sufficiency of, and certifying to the Attorney General initiative and referendum measures are legislative acts, in pursuance of legislative power given him, then the acts of the most inferior and most

remote precinct election officer of the state, whose duty it is to conduct elections upon such measures, canvass the vote, and make return thereof, are also legislative, for such precinct election officer discharges duties more closely related, both in time and place to the real act of legislation, to wit, the expression of the people by their vote upon the measure submitted, than are those performed by the Secretary of State. Under the logical sequence of the rule contended for, the precinct election officer might, with indifference to the result, refuse to perform duties purely ministerial in character imposed upon him by the statutes. The board of canvassers might refuse to canvass the votes, or refuse to certify the returns after canvassing, and the public would be without remedy. It will not answer to say that such election officer might be punished by fine or imprisonment. Such a remedy would not prevent the defeat of the power which the people of this state have in measured and well-guarded terms reserved to themselves. A rule susceptible of so frequent and general abuse that under the influence of the prejudice and passion that often attend the settlement of partisan questions would tend so greatly to defeat the right of the people to have their public servants perform specific statutory or constitutional duties imposed upon them, the discharge of which is not left to their discretion or option, ought not to be adopted, unless the reason and force of logic supporting the same is irresistible.

*Frantz et al. v. Autry,* 18 Okla. 561, 91 Pac. 193, has been cited in support of respondent's contention that this court is without jurisdiction in this proceeding. In that case defendant in error, who was petitioner in the lower court, sought a writ of injunction enjoining and restraining the Governor of the territory, the President of the Constitutional Convention, and other officers of the Constitutional Convention, and officers appointed by the election ordinance of the Constitutional Convention, from proceeding to issue a proclamation calling, and from holding, an election at which the Constitution prepared and proposed by the Constitutional Convention should be voted upon by the electors of what was then the territory of Oklahoma and the Indian Territory, now the state of Oklahoma. The grounds upon which the injunction was

sought were that the Constitutional Convention, in the submission of the Constitution proposed by it to the people for ratification, had transcended the authority granted it by the Enabling Act, in that it had incorporated in the Constitution provisions in violation of the Enabling Act and of the federal Constitution. The Supreme Court of the territory held the Constitutional Convention to be a legislative body of the highest character, and that in the exercise of its legislative authority its discretion could not be controlled by injunction. In that case, while the object directly sought was to prohibit the performance by the respondents of duties imposed upon them by law, the primary object was to tie the hands of the Constitutional Convention, and by judicial writ say to the Convention what measures it should submit, and what measures it should not submit, to the people for their ratification as part of the proposed Constitution. Had the officers in that case whose duty it was under the law to issue a proclamation and to proceed to hold the election for the adoption or rejection of the Constitution refused to act, and a proceeding had been brought to compel them to perform the duties imposed upon them by law, that case would have presented a question similar to the one now before us. The doctrine of that case is sound. Where it is sought by judicial writ directly or indirectly to interfere with the exercise of legislative power, and to control the discretion of those to whom such power has been granted, the courts are without jurisdiction. A court of equity cannot interfere or in advance restrain the discretion of the legislative body of a municipal corporation while it is in the exercise of powers that are legislative in character. *New Orleans Waterworks Co. v. New Orleans,* 164 U. S. 471, 17 Sup. Ct. 161, 41 L. Ed. 518; *Des Moines Gas Co. v. City of Des Moines,* 44 Iowa, 505, 24 Am. Rep. 756. But where the duty of the legislative body of the municipal corporation is purely ministerial, such body may be controlled in the performance thereof by the proper writ. *Good v. Common Council of San Diego,* 5 Cal. App. 265, 90 Pac. 44. In this case it was sought by mandamus to compel the city council of San Diego to call an election, at which it should be determined whether one of the councilmen of the city should be re-

moved. The charter of the city provided that "the holder of any elective office may be removed at any time by the electors qualified to vote for the successor of such incumbent." The method of removal was by an election to be called by the city council upon petition being filed therefor by 25 per centum of the electorate of the district from which the officer was elected. The sufficiency of the petition had, as required by the statute, been determined by the city clerk, who had certified the petition to the city council, whose duty it was under the law to call the election. Upon refusal of the city council to call the election it was coerced to do so by mandamus, the court saying:

"There is no discretion vested in the common council in connection with the calling of this election. That body's functions are purely ministerial; but, if it be conceded that it was vested with some discretion, it does not follow that it can refuse to act."

*State v. Thorson,* 9 S. D. 149, 68 N. W. 202, 33 L. R. A. 582, and *People ex rel. v. Mills,* 30 Colo. 262, 70 Pac. 322, have been cited as supporting the contention of respondent. In the Thorson Case it was attempted to enjoin respondent, as Secretary of State, from certifying to the Auditor of the State a question submitted by the Attorney General to be voted upon at the next general election held in the state to determine whether a certain article of the Constitution of that state should be repealed. There was some doubt in the minds of the court whether the effect of such proposition, if adopted, would be an amendment to the Constitution, but it was treated by the court as a proposed constitutional amendment. In the Mills Case it was attempted to enjoin the Secretary of State of Colorado from publishing notices of the submission to the voters of that state of amendments to the Constitution, proposed by the General Assembly at its regular session. In that case the court followed the Thorson Case. In each of these cases the writ of injunction was denied upon the ground that the granting of it would be an interference with the legislative authority of the General Assemblies of those respective states. These cases, we think, like the Autry Case, *supra,* may be distinguished from the case at bar. To enjoin the Secretary of State from proceeding to perform duties

which the Constitution or statute imposes upon him in connection with the submission of a certain proposition to a vote of the people because the Legislature has irregularly proceeded therein, or because of supposed defects in the amendment proposed which may render it invalid, if adopted, could not be more effective for the purpose of controlling the legislative body in the exercise of its power to submit constitutional or statutory questions than if the injunction had been directed against the legislative body. It cannot be contended that the court has power to interfere or control by writ the legislative department in the exercise of its powers; the effect of the writ prayed for in this case will not be to control those vested with legislative power in this state in the determination of what they shall submit to the people, or whether they shall submit anything, nor will it in any way interfere with such submission. That is a question which must be determined by those in whom the power has been vested. When the respondent has been directed to proceed and to determine the sufficiency of the petitions filed, the effect of such order will not be that a vote upon the measure to be referred shall be had or shall not be had; nor will the writ in any way influence or control the determination of that question. That question has been determined by the people themselves by having complied with the constitutional and statutory provisions for referring a measure, or by their failure to comply therewith. Respondent is but commanded to perform a plain, statutory duty.

There is not an entire absence of authorities which, by analogy, support the conclusion we reach upon this question. In *Kimberly et al. v. Morris et al.*, 87 Tex. 637, 31 S. W. 808, the statute made it the duty of the board of county commissioners of any county of the state of Texas, upon petition of 250 voters of the county, to order an election to determine whether the sale of intoxicating liquors should be prohibited in such county. Respondents, upon the filing of such petition, refused to call the election. A writ of mandamus was awarded to compel them to do so. The Constitution of the state of North Dakota declares that the powers and duties of the Secretary of State shall be as pre-

scribed by law. One of the duties imposed by the statutes of that state upon the Secretary of State is to certify to the county auditors any proposed constitutional amendment or other questions to be submitted to the people for their vote thereon. The Legislature, by resolution, submitted the question whether a constitutional convention should be called at some future date for the purpose of revising the Constitution of the state. The Secretary of State, upon refusing to certify the proposition submitted by the Legislature, was compelled to do so by mandamus. *State ex rel. Wineman v. Dahl,* 6 N. D. 81, 68 N. W. 418, 34 L. R. A. 97. *Commonwealth v. Griest,* 196 Pa. 396, 46 Atl. 505, 50 L. R. A. 568, was an application for a writ of mandamus to compel the respondent to submit a proposed constitutional amendment which he had refused, upon several grounds, to submit. The writ was allowed. *State ex rel. Morris v. Mason, Secretary of State,* 43 La. Ann. 590, 9 South. 776, was a similar case with a similar result. There has been cited, and after a careful examination of authorities we have been able to find, no case wherein it was sought to compel a Secretary of State to discharge duties in connection with the submission of a constitutional amendment, or other question authorized to be voted upon by the people, where such duties were imposed upon him by constitutional provisions or by statute, and he had refused to act, that the writ was not allowed.

We conclude that the court has jurisdiction of this proceeding, and the peremptory writ is awarded.

All the Justices concur.